BILLMAN et al., Appellants,

v.

HIRTH, Appellee.

[Cite as *Billman v. Hirth* (1996), 115 Ohio App.3d 615.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APE04–439.

Decided Nov. 19, 1996.

*Billman Law Office* and *Donald Lynn Billman,* for appellants.

*Roetzel & Andress* and *Brant E. Poling; Porter, Wright, Morris & Arthur* and *Leslie A. Yovan,* for appellee C. Scott Hirth, M.D.

DESHLER, Judge.

This is an appeal by plaintiffs, Velma R. Billman and Charles H. Billman, from a summary judgment granted by the Franklin County Court of Common Pleas in favor of defendant, Dr. C. Scott Hirth.

On June 24, 1992, plaintiffs filed a complaint alleging that defendant, a physician, was negligent in providing medical treatment to Velma Billman.[1] Specifically, the complaint alleged that, from January 28, 1987 through June 24, 1988, Billman was under the care and treatment of defendant for a cardiac condition, including the prescription of certain cardiac medications (Lasix, Dyazide, and Digoxin). On June 24, 1988, Velma Billman suffered a full respiratory and cardiac arrest, resulting in her hospitalization until March 11, 1990.

The complaint alleged that plaintiff's cardiac arrest "was triggered by hypokalemia (abnormally low potassium content in the blood), in the presence of Digoxin as an aggravating drug." It was averred that defendant was negligent in failing to advise plaintiff of the risks of taking certain medications and in failing to obtain informed consent. It was further alleged that defendant was negligent in failing to prescribe potassium supplements.

Defendant filed an answer on July 22, 1992, denying the allegations of negligence and raising various affirmative defenses. A trial date was assigned for June 22, 1994. Pursuant to a case schedule order, a discovery cut-off date was set for March 16, 1994. On October 12, 1993, defendant filed a motion to compel plaintiffs and their counsel to provide deposition dates for all of plaintiffs' expert witnesses. On October 26, 1993, plaintiffs filed a memorandum in opposition to defendant's motion to compel discovery. Plaintiffs also sought an extension of the discovery cut-off date from March 16, 1994 until May 1, 1994.

On December 8, 1993, the trial court conducted a discovery status conference. By entry filed December 9, 1993, the court issued a pretrial order granting defendant's motion to compel and shortening the original discovery deadline as to the taking of depositions of plaintiffs' expert witnesses. Specifically, the pretrial order provided: "Plaintiff[s] shall make every effort to make plaintiffs['] expert witnesses available for deposition, to be completed by February 15, 1994." The order further provided for "[a]ll other discovery deadlines to remain in effect."

On February 22, 1994, defendant filed a motion for an order prohibiting plaintiffs from offering the testimony of plaintiffs' treating physicians and medical expert witnesses who were not deposed prior to February 15, 1994. Plaintiffs filed a memorandum in opposition on March 2, 1994. On March 9, 1994, the trial court issued a decision sustaining defendant's motion. The court's decision provided in part that plaintiffs were prohibited from introducing medical and expert trial testimony from any of their previously identified expert witnesses "other than that of Drs. Cunningham, Ecker, and Bush." The decision of the trial court was journalized by judgment entry filed April 1, 1994.

---

1. Prior to the instant action, plaintiffs originally filed a complaint against defendant on December 15, 1989. Plaintiffs voluntarily dismissed this complaint on June 24, 1991.

Plaintiffs subsequently filed a notice of appeal from the judgment of the trial court. By entry filed June 21, 1995, this court granted defendant's motion to dismiss the appeal for lack of a final appealable order.

On June 21, 1995, defendant filed a motion with the trial court requesting that a pretrial date be assigned and also asking the court to enter an amended case schedule order. On January 26, 1996, the parties entered into an agreed stipulation of facts. Paragraph nineteen of the stipulation of facts provides:

"Mr. and Mrs. Billman, as a result of this court's prior discovery orders and this court's April 1, 1994 judgment entry, are precluded from introducing at trial any medical expert liability testimony against Dr. Hirth and, therefore, are unable to offer any competent medical evidence that Dr. Hirth deviated from accepted standards of care in the medical care and treatment Dr. Hirth provided to Mrs. Billman, as alleged within Mr. and Mrs. Billman's complaint * * *."

On February 15, 1996, defendant filed a motion for summary judgment against plaintiffs. On March 6, 1996, plaintiffs filed a reply to the motion for summary judgment, arguing that the trial court erred in issuing the discovery order of April 1, 1994 and that plaintiffs "have no option other than to exercise their right of appeal to the Franklin County Court of Appeals."

By entry filed March 11, 1996, the trial court granted summary judgment in favor of defendant. On appeal, plaintiffs set forth the following three assignments of error for review:

"1. The trial court abused its discretion in prohibiting plaintiffs from offering—at the time of their medical malpractice action—any testimony from plaintiff Velma Billman's treating physicians and from her ' * * * previously identified medical expert witnesses * * * ' as the sanction imposed for failure to completely comply with the trial court's pretrial order of December 9, 1993.

"2. The trial court was without authority and otherwise abused its discretion in issuing a pretrial order requiring plaintiffs' counsel to schedule oral depositions of plaintiffs' witnesses for the benefit of deposing by defendant's counsel.

"3. The trial court was without authority and otherwise abused its discretion by imposing the severe sanction of prohibiting the plaintiffs in a medical malpractice action from offering the testimony of their medical witnesses without having first given plaintiffs notification of the intended sanction with an opportunity to correct the perceived defect in complying with its discovery order."

Plaintiffs' appeal from the trial court's grant of summary judgment in favor of defendant challenges solely the propriety of the court's rulings on discovery matters, including the court's pretrial order requiring plaintiffs to schedule depositions for their expert witnesses, as well as the court's subsequent sanction order, precluding certain witnesses of plaintiffs from testifying at trial. Under

the first assignment of error, plaintiffs contend that the trial court abused its discretion in excluding the testimony of their expert witnesses as a sanction for failing to comply with the court's pretrial discovery order.

■ In general, it is within the trial court's discretion to determine the particular sanction to be imposed for a discovery infraction. *Russo v. Goodyear Tire & Rubber Co.* (1987), 36 Ohio App.3d 175, 178, 521 N.E.2d 1116, 1120. In *Russo*, the court noted:

"The appropriateness of the choice is reviewable to the extent that an abuse may have occurred in the exercise of the trial court's discretion in the selection of the sanction. Thus, the trial court must consider the posture of the case and what efforts, if any, preceded the noncompliance and then balance the severity of the violation against the degree of possible sanctions, selecting that sanction which is most appropriate.

"In deciding, the trial court should look to several factors: the history of the case; all the facts and circumstances surrounding the noncompliance, including the number of opportunities and the length of time within which the faulting party had to comply with the discovery or the order to comply; what efforts, if any, were made to comply; the ability or inability of the faulting party to comply; and such other factors as may be appropriate." *Id.*

The record in the instant case indicates that plaintiffs filed an "initial disclosure of witnesses" list on May 19, 1993. The list included ten medical witnesses (physicians and surgeons) and one expert witness, Dr. George Schneider. Dr. Schneider's address was designated as 204 Eagle Rock Avenue, Roseland, New Jersey.

As previously noted, defendant filed a motion to compel plaintiffs to provide deposition dates for plaintiffs' medical and expert witnesses on October 12, 1993. In that motion, defendant noted that, despite a number of previous requests, plaintiffs' counsel had failed to schedule deposition dates for any of their medical expert witnesses. The trial court, following a status conference, issued a pretrial order, filed on December 9, 1993, which stated: "Plaintiff[s] shall make every effort to make plaintiffs['] expert witnesses available for deposition, to be completed by February 15, 1994. All other discovery deadlines to remain in effect."

The record indicates that at the time defendant filed his February 22, 1994 motion for an order prohibiting plaintiffs from introducing specific medical testimony, the depositions of two physicians (Dr. Charles Cunningham and Dr. Robert A. Ecker) had been completed, while deposition dates for two other medical witnesses (Dr. Charles R. Bush and Dr. Douglas Wallace) had been scheduled to take place after the February 15, 1994 cut-off date.

In plaintiffs' memorandum in opposition to defendant's motion, counsel for plaintiffs cited the following factors as hindering the scheduling of depositions: "Worst winter in Ohio's recorded history"; "furnace at plaintiffs' counsel's office failed to provide heat for three weeks"; "illness of plaintiffs' counsel"; and "expert witnesses out of town for holidays."

The memorandum also discussed counsel's efforts to obtain the deposition dates of various witnesses. Specifically, plaintiffs' counsel noted in the memorandum that the depositions of Drs. Cunningham and Ecker had been obtained prior to the February 15, 1994 cut-off date, that a deposition date for Dr. Bush had been set for March 16, 1994 (after being rescheduled from a February 16 date due to a scheduling conflict), and that Dr. Wallace had indicated he would be available for a deposition on February 22, 23 or 24. Counsel for plaintiffs also averred that he had arranged for the deposition of Dr. Cahit Palantekin for March 10, 1994. Counsel stated that Dr. Steward Stock "indicated he did not have time for a deposition." Regarding the "balance of listed experts," plaintiffs' counsel stated that he would "continue with his efforts to obtain times when defendant's counsel may take his requested discovery depositions."

In its decision sustaining defendant's motion to exclude, the trial court held:

"After much ado, the depositions of three physicians were scheduled to be taken before the discovery cut-off date of February 15, 1994. These include Dr. Cunningham, Dr. Ecker, and Dr. Bush. (Dr. Bush was scheduled for February 16, 1994 and was postponed until March 16, 1994 without objection.) No other deposition was timely scheduled. Therefore, pursuant to this court's previous order, no other trial testimony will be admitted, other than that of Drs. Cunningham, Ecker, and Bush."

"Civ.R. 37 authorizes the court to make 'just' orders in response to violations of the discovery rules or court orders." *Laubscher v. Branthoover* (1991), 68 Ohio App.3d 375, 381, 588 N.E.2d 290, 294. One of the sanctions permitted under Civ.R. 37(B) is an order prohibiting the offending party from introducing designated matters in evidence. However, "[t]he exclusion of reliable and probative evidence is a severe sanction and should be invoked only when clearly necessary to enforce willful noncompliance or to prevent unfair surprise." *Nickey v. Brown* (1982), 7 Ohio App.3d 32, 34, 7 OBR 34, 37, 454 N.E.2d 177, 180.

As noted above, in the present case, a discovery cut-off date was originally set for March 16, 1994, and a trial date for this matter was scheduled for June 22, 1994. Following defendant's motion to compel, counsel for plaintiffs moved to extend the discovery cut-off date an additional six weeks, to May 1, 1994. However, despite the number of potential medical and expert witnesses (eleven), the trial court, in its December 1993 pretrial order, shortened the time for the

depositions of witnesses to February 15, 1994. The pretrial order itself was framed in somewhat equivocal language, stating that plaintiffs "shall make every effort" to provide their experts for deposition "to be completed by February 15, 1994." Despite the vague language employed, the trial court subsequently interpreted its order to apparently mean that any depositions not taken prior to the cut-off date would constitute a violation of the order and result in the exclusion of those witnesses. We find, however, that the scope of the order was susceptible of varying interpretation and arguably provided plaintiffs' counsel with what proved to be a mistaken sense of leeway. We note that the record indicates that plaintiffs' counsel did make efforts to arrange depositions for at least five of the witnesses prior to the court's sanction order (although some of these witnesses could not be deposed prior to the February 15, 1994 date).

While the trial court in the instant case did not impose the most severe sanction permitted, i.e., dismissal of the action, the effect of the court's order, which included the exclusion of the testimony of plaintiffs' expert on the standard of care, was tantamount to a dismissal, resulting in the court's granting of defendant's motion for summary judgment. Under the circumstances of this case, including the large number of witnesses to be deposed, the court's shortening of the discovery cut-off date, the equivocal language of the court's order and the practical effect of the sanction ultimately imposed, we find that it was unreasonable for the trial court to have excluded the witnesses at issue as a sanction for violation of the court's pretrial order. While we are cognizant that the trial date in this matter was approaching at the time defendant sought the sanctions at issue, even assuming that the court had granted plaintiffs' request to extend the discovery cut-off date to May 1, 1994 (or merely maintained the original discovery cut-off date of March 16, 1994), we cannot conclude that defendant would have been unduly prejudiced. Thus, under the facts of this case, and applying the "basic tenet of Ohio jurisprudence that cases should be decided on their merits," Perotti v. Ferguson (1983), 7 Ohio St.3d 1, 3, 7 OBR 256, 257, 454 N.E.2d 951, 952, we find that the sanction imposed in the instant case was too harsh.

Plaintiffs' first assignment of error is sustained.

Given our finding that the trial court abused its discretion in ruling on the discovery matters at issue, we also find that the trial court erred in granting summary judgment in favor of defendant, as the discovery ruling precluded plaintiffs from challenging the summary judgment motion. Based upon our disposition of the first assignment of error, plaintiffs' second and third assignments of error are rendered moot.

Accordingly, plaintiffs' first assignment of error is sustained, plaintiffs' second and third assignments of error are rendered moot, the judgment of the trial court

is reversed, and this matter is remanded to the trial court for further proceedings in accordance with law and consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

LAZARUS, J., concurs.

CLOSE, J., dissents.

CLOSE, Judge, dissenting.

The answer in this case was filed on July 22, 1992. As early as October 1993, plaintiffs had failed to provide deposition dates for their expert witnesses and, not insignificantly, requested an extension of the discovery cut-off date because twenty-one months was not enough time for them to complete their discovery, despite the relatively simple nature of the case.

In December 1993, the trial court put on an order that "[p]laintiff[s] shall make every effort to make plaintiffs['] expert witnesses available for deposition, to be completed by February 15, 1994. All other discovery deadlines to remain in effect." I would emphasize that this case was originally set with a twenty-one-month discovery period, and, although the majority observes that the trial judge reduced that period, there were still twenty months allowed for discovery. The witness disclosure list was filed as early as May 1993. Was it an abuse of discretion for the trial court to expect that, prior to mid-February 1994, the depositions of those witnesses would be completed?

Counsel for plaintiff responded that it was the worst winter in Ohio's history, that the furnace for his office failed to provide heat for three weeks, and that an expert witness was out of town for the holidays. The record *does not* reflect that counsel made good-faith efforts on a timely basis to comply with the trial court's cut-off order. The furnace may have been out in counsel's office, but there was no excuse, over a period of several months, for counsel not to use his telephone to make the effort to schedule the requested depositions. *Nakoff v. Fairview Gen. Hosp.* (1996), 75 Ohio St.3d 254, 662 N.E.2d 1, decided just over six months ago by the Ohio Supreme Court, stands for the right of the trial court to use its discretion in imposing sanctions. There was nothing perverse about the decision the trial court made. The trial court was faced with the situation of a lawyer who had not done his job over a lengthy period of time and then, when ordered to do so, offered only excuses as to why he did not.

Lacking a perversity in the judgment of the trial court that would meet the well-established standards of abuse of discretion, we remove a significant arrow from the quiver of trial judges who face the awesome responsibility to ensure

justice in a timely manner. As I feel that the judgment of the majority of this court fails to recognize that the action of the trial judge was within the discretion that he is allowed, I would affirm the judgment in all respects.