This matter presents a timely appeal from a jury verdict and judgment rendered upon such verdict by the Columbiana County Common Pleas Court, finding in favor of defendant-appellee, J. Michael Kapp, and against plaintiff-appellant, Doris M. Nuckols.
Appellant approached appellee in January of 1992, regarding appellee's possible legal representation of her in a divorce action. At this meeting, appellee informed appellant that he believed she would be entitled to one-half of the marital estate as well as lifetime spousal support, due to the length of her marriage.
Approximately two weeks later, appellant retained appellee to represent her in the divorce action. Appellee agreed to represent appellant at the rate of $200.00 per hour. Appellee also required appellant to deposit a $3,500.00 retainer. Because of appellant's limited access to funds at this time, appellee advised her to take a cash advance on her credit card. At the conclusion of this meeting, appellee asked appellant to determine her living expenses. Initially, appellee told appellant that he would obtain a temporary support order for her. Appellee eventually decided against such an order, apparently because he did not want appellant to get trapped into a lower dollar amount for temporary support. Appellee was aware of appellant's financial situation throughout the pendency of the divorce and knew that appellant was living off her one-half share of a Merrill Lynch account which amounted to approximately $20,000.00.
It appears from appellee's billing records that he spent less than three hours per month preparing for appellant's final divorce hearing until one month before the trial date. It appears that during the month prior to trial, appellee spent in excess of sixty hours in preparation. Appellee made his first discovery request four days prior to trial and did not retain a financial expert to help prepare for the trial.
A trial date was set for December 8, 1992. Appellee asked to meet with appellant the Friday before the Tuesday trial date. At this meeting, appellee went over appellant's living expenses. Appellee met with appellant again on Saturday and the Monday before the December 8, 1992 trial date. Appellee spent much of his time prior to trial attempting to negotiate a settlement in the divorce action.
The facts surrounding the settlement negotiations were disputed by the parties at trial. It does seem clear, however, that on December 7, 1992, appellee presented a settlement proposal to appellant. Under this proposal, appellant was to receive: 1) the marital residence which held a mortgage; 2) her personal property; 3) the vehicle customarily driven by her and leased in her name; and, 4) $4,750.00 per month in spousal support for a period of ten years. Appellant's husband was to retain all of the business acquisitions held by the parties under this proposal.
At this point, appellant inquired as to why her share of the settlement proposal was so modest, considering the fact that the parties were reporting net income in excess of $300,000.00 per year. Appellee responded that one of the parties' business acquisitions, Lehman Mills, Inc., was subject to multiple products liability lawsuits which could bankrupt the company. Appellant asked appellee if there was any possibility of delaying the divorce until such lawsuits were concluded. Appellee replied that he could not delay the court date.
Appellant ultimately agreed to the settlement proposal. The trial date was continued for one week so that the settlement agreement could be prepared and executed.
On December 16, 1992, appellant met appellee at the courthouse and was provided with the settlement documents. Appellant was told to sign the documents in their entirety. Appellee then explained that they were going to go into the courtroom and that he was going to ask her some questions to which she was to respond by saying "yes". The invoice for appellee's services in the within divorce case totaled $13,500.00.
Appellant filed the within cause of action against appellee on September 26, 1994, alleging legal malpractice (under breach of contract, breach of fiduciary duties, and negligence theories) arising from appellee's representation of her in the divorce action entitled Nuckols v. Nuckols, Case No. 92-DR-112.
The entire bench in Columbiana County recused itself and a visiting judge was assigned to hear this matter. This case was then consolidated with another legal malpractice case against appellee, namely Urmson v. Kapp, Case No. 94-CIV-545. Urmson v.Kapp was dismissed on September 20, 1996.
According to appellee's expert witness list, which was filed February 16, 1996, he intended to call as his expert witnesses, among others, the attorney and financial witness for appellee's ex-husband in the underlying divorce action. Appellant moved to exclude the testimony of these two witnesses on the basis of impartiality. Appellant then filed a motion in limine on this matter, which the trial court overruled. This motion was renewed at trial and was again overruled.
The jury trial in this matter began on November 4, 1996. The jury returned a verdict in favor of appellee on November 6, 1996. The trial court filed its judgment entry on such verdict. It is from this decision that the within appeal emanates.
Appellant sets forth five assignments of error on appeal.
Appellant's first assignment of error alleges:
 "The trial Court erred in denying the Plaintiff/Appellant's renewed First Motion in Limine."
Appellant's first assignment of error centers around the testimony of appellee's expert financial witness, James M. Rosa. Mr. Rosa had previously served as an advisor for appellant's ex-husband in the underlying divorce action. Appellant argues that at the core of the qualification requirements for experts is the concept of impartiality. Appellant argues that Mr. Rosa's earlier work for her ex-husband created a conflict of interest and therefore, Mr. Rosa could not be impartial in his testimony with regards to this case.
Appellant also notes that Mr. Rosa testified that he never finalized his report and that he did not know whether or not it was accurate as of the date of final hearing in the underlying divorce action. Appellant contends that as a result, Mr. Rosa could not help the jury in its search for the truth. Appellant also contends that this situation created an appearance of impropriety.
Appellant concludes that to allow Mr. Rosa to testify as an expert in this case constituted an abuse of discretion on the part of the trial court.
The determination of whether a witness possesses the qualifications necessary to allow his or her expert testimony is within the sound discretion of the trial court. State v.Wages (1993), 87 Ohio App.3d 780. This determination will not be reversed by an appellate court unless there is a clear showing of an abuse of discretion on the part of the trial court. Wages, supra. "Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable". Tracyv. Merrell-Dow Pharmaceuticals, Inc. (1991), 58 Ohio St.3d 147,152.
The testimony offered by an expert witness must be relevant to the issues of the case and such testimony must assist the trier-of-fact in understanding the evidence presented or in determining a fact in issue. Wages, supra. In the case subjudice, it is clear that Mr. Rosa had the type of credentials necessary to qualify him as an expert on financial information, a fact which appellant does not dispute.
Appellant bases her argument on the fact that Mr. Rosa had served as the financial expert for her ex-husband in the underlying divorce action, which she believes creates a conflict of interest. Appellant tries to paint a picture in which appellee, appellant's ex-husband, and Mr. Rosa were involved in a conspiracy to deprive appellant of what she believes to be her fair share of the parties' marital assets. In reality, the within case is a distinct action which will have no effect on her previous divorce action and to which her ex-husband is not a party.
The language of Evid. R. 702 does not bar Mr. Rosa from testifying in this situation. Therefore, the trial court had the discretion to determine whether Mr. Rosa's previous ties to appellant's ex-husband would affect his ability to provide expert testimony in this case. The trial court found that it would be proper for Mr. Rosa to provide expert testimony herein, and this court will not substitute its judgment for that of the trial court. The trial court did not act arbitrarily or unreasonably in allowing Mr. Rosa's testimony and therefore, did not abuse its discretion in denying appellant's motion in limine.
Appellant's first assignment of error is found to be without merit.
Appellant's second assignment of error alleges:
 "The Trial Court erred in denying the Plaintiff/Appellant's Motion for Sanctions and in Limine."
Appellant's second assignment of error centers around the failure of Mr. Rosa to produce his file prior to his witness deposition on October 31, 1996, which was taken due to his unavailability for trial. Appellant finally received this file on November 2, 1996. Appellant points to notations in the file which she claims lend support to her conclusion that the witness was not impartial. These notations include one which states "Divorce situation — trying not to overvalue" and provide for various contingency plans involving the Nuckols' companies, which Mr. Rosa originally testified he did not make.
Appellant argues that she had a right to cross-examine Mr. Rosa on the statements made in his file and that the sanctions fashioned by the trial court in this instance did not remedy the problem. The trial court instructed the jury that Mr. Rosa failed to produce his file prior to his deposition. Appellant argues that this did not cure the defect and therefore, the trial court abused its discretion in denying her motion for sanctions.
It was within the trial court's discretion to determine the appropriate sanction for a discovery infraction. Billman v.Hirth (1996), 115 Ohio App.3d 615. The appropriateness of the sanction is reviewable to the extent that an abuse may have occurred in the exercise of the trial court's discretion in determining the sanction. "Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude is unreasonable, arbitrary, or unconscionable." Tracy, supra.
Civ.R. 37 permits the trial court to make "just" orders in response to violations of the discovery rules or court orders.Billman, supra. One of the sanctions permitted under Civ.R. 37(B) is an order prohibiting the offering party from introducing designated matters into evidence. Billman, supra.
However, the exclusion of reliable and probative evidence is a severe sanction and should be used only when clearly necessary to enforce noncompliance or to prevent unfair surprise.Billman, supra. The basic tenet of Ohio jurisprudence is that cases should be decided on their merits. Billman, supra.
Ohio case law demonstrates that the exclusion of evidence is a severe sanction that should only be used in extreme circumstances. Consequently, a trial court which decides not to order a severe sanction is within its discretion to do so. Therefore, the trial court's decision to allow Mr. Rosa's deposition into evidence was within its sound discretion.
The sanctions of the trial court were sufficient and included: 1) informing the jury that the file material had not been made available; 2) allowing the file into evidence; and, 3) permitting appellant's counsel to comment as he saw fit in final argument. Such sanctions sufficiently cured the defect complained of, without the necessity of using the severe sanction of excluding evidence. Therefore, we cannot say that the trial court acted arbitrarily or unreasonably in denying the exact sanctions requested by appellant in her motion.
Appellant's second assignment of error is found to be without merit.
Appellant's third assignment of error alleges:
 "The Trial Court erred in denying the Plaintiff/Appellant's Motion for a Directed Verdict."
Appellant outlines a number of duties owed to her that she claims appellee breached. These duties include: 1) the duty to procure a temporary support order; 2) the duty to proceed with a temporary support hearing; 3) the duty to conduct discovery; 4) the duty to evaluate the marital estate; 5) the duty to obtain an equitable share of the marital estate; 6) the duty to obtain adequate spousal support; 7) the duty not to charge an unreasonable fee; and, 8) the duty not to commingle funds.
Appellant presented expert testimony with regards to each of the above listed duties and their alleged breach. Appellant contends that appellee failed to provide expert testimony with regards to those duties, which she believes was required. She concludes that because no expert testimony was provided by appellee, her theory of the case was not rebutted and therefore, she was entitled to a directed verdict.
The court in David v. Schwarzwald, Robiner, Wolf 7 Rock Co.,L. P. A. (1992), 79 Ohio App.3d 786, outlined the test to be used when ruling on a Civ.R. 50(A) motion for a directed verdict:
 " 'The evidence adduced at trial and the facts established by admissions in the pleadings in the record must be construed most strongly in favor of the party against whom the motion is made, and, where there is substantial evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in ruling upon either of the above motions.' " (Citations omitted).
The court in David, supra, then outlined the elements of a cause of action for legal malpractice, which are: 1) an attorney-client relationship giving rise to a duty; 2) breach of that duty; and, 3) damages proximately caused by the breach.
The basis for all of appellant's sub-arguments is that appellee failed to put on an expert to testify regarding the various duties and their alleged breach. Appellant implies that there was a requirement for expert testimony on the part of appellee. Appellant then concludes that because appellee did not put an independent expert on the stand, a verdict should have been directed in her favor.
Appellant's argument is misplaced in that she fails to cite any authority for the proposition that the defense in a malpractice cause of action is required to put an independent expert on the stand in every case. The nature of a malpractice cause of action will require a plaintiff to, in almost every foreseeable circumstance, provide expert testimony as a plaintiff will not have the expertise to testify as to whether a defendant breached a duty owed to him or her. However, a defendant in a malpractice cause of action would, arguably, possess the required skill and knowledge to testify as to whether or not they met the applicable standard of care. Therefore, it is not an absolute necessity that a defendant in a malpractice cause of action present independent expert testimony.
The trial court in the case sub judice, in its discretion, allowed appellee to testify with regards to the different duties and whether they were breached by him. Appellee testified that he did not breach these duties within a reasonable degree of probability. Stinson v. England (1994),69 Ohio St.3d 451. Therefore, appellee's testimony put the breach of the individual duties cited by appellant into issue. When viewing the evidence most strongly in favor of appellee, his testimony became the substantial evidence to support his side of the case, and reasonable minds could reach different conclusions. Therefore, in considering the evidence presented on both sides, the trial court properly denied appellant's motion for directed verdict.
The most troubling of all the various duties proposed by appellant is the commingling of funds issue. However,Palmer v. Westmeyer (1988), 48 Ohio App.3d 296, states that a violation of a disciplinary rule does not entitle an appellant to a legal malpractice claim unless the appellant can show that it was the proximate cause of damages. Appellant did not show that appellee failed to earn the initial retainer or that she was damaged in any way by the commingling of the retainer. Therefore, the trial court was correct in not directing a verdict on this issue.
Appellant's third assignment of error is found to be without merit.
Appellant's fourth assignment of error alleges:
 "The Jury's Verdict was against the manifest weight of the evidence."
Appellant argues that, for the reasons stated under her third assignment of error, the weight of the evidence cannot support the jury's verdict in favor of appellee.
Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. Gerijo, Inc. v. City of Fairfield
(1994), 70 Ohio St.3d 223. In considering whether the judgment of the trial court is against the manifest weight of the evidence, it is important that a reviewing court be guided by a presumption that the findings of the trier-of-fact are correct.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. As previously discussed under appellant's third assignment of error, appellee's own testimony provided the competent credible evidence going to the essential elements of the case. He testified in each and every instance in which appellant claimed a duty had been breached that either the duty was not breached or that there were no damages. These two elements along with an attorney-client relationship are essential to a claim of legal malpractice. Therefore, applying the presumption that the findings of the trier-of-fact are correct, we cannot find that the verdict was against the manifest weight of the evidence.
Appellant's fourth assignment of error is found to be without merit.
Appellant's fifth assignment of error alleges:
 "The Trial Court erred in denying the Plaintiff/Appellant's Motion for J.N.O.V., or in the alternative, for a New Trial. J.E. filed 13, 1997."
Appellant points to her discussion under her third assignment of error to conclude that the trial court erred in failing to grant her motion for J.N.O.V.. Appellant points to the arguments in her fourth assignment of error to show that it was error for the trial court to deny her motion for a new trial.
The test that is used to determine whether to grant a motion for a directed verdict is applicable when ruling on a motion for J.N.O.V.. David, supra. Therefore, the analysis used to find appellant's third assignment of error to be without merit is applicable to this assignment of error.
The decision to grant a new trial is within the discretion of the trial court. Brooks v. Wilson (1994), 98 Ohio App.3d 301. A reviewing court will not reverse this decision absent an abuse of discretion. Brooks, supra. Therefore, this court will not reverse the trial court's decision unless it appears to be unreasonable, arbitrary, or unconscionable. Tracy, supra. Such an abuse will be found only in the rare circumstance where a decision is so grossly violative of fact and logic that it demonstrates a perverse will, a defiance of judgment, undue passion, or extreme bias. Brooks, supra.
As discussed earlier, the testimony of appellee put all of the facts of this case into issue. The jury considering the evidence presented could properly have found for appellee. Therefore, the decision rendered in this case was not grossly violative of fact and logic and was not the product of a perverse will, a defiance of judgment, undue passion, or extreme bias. The trial court was within its discretion in denying appellant's motion for a new trial.
Appellant's fifth assignment of error is found to be without merit.
The judgment of the trial court is affirmed.
Donofrio, P.J., concurs.
Vukovich, J., dissents. See dissenting opinion.
APPROVED:
 ------------------------------ EDWARD A. COX, JUDGE