OPINION
Plaintiffs-Appellants Donald M. Jones and John L. Jones, dba Jones Spreading Service (hereinafter "the Jones brothers"), and Michael Trevor James Stokes (collectively referred to as "Plaintiffs") appeal the trial court's November 19, 1998, amended judgment entry in favor of Defendant-Appellee Hartzell Propeller, Inc. (hereinafter "Hartzell").
The relevant facts as revealed by the record establish that on January 19, 1992, Stokes, a resident of Australia, was piloting a Transavia PL-12 Airtruk aircraft in the course of his employment as a crop duster for the Jones brothers, also Australian residents, in northern Tasmania, Australia. As he guided the plane into a turn, one of the propeller blades separated from the propeller assembly causing the craft to crash into a field. Fortunately, Stokes, who was the only one on board, was able to free himself from the safety harness and crawl out of the plane after it came to rest upside down in the field. Covered in fuel and chemicals from the plane's load, Stokes made his way to a farmhouse about a mile from the crash site where he showered and was provided with clean clothing. Emergency medical assistance was called for, and Stokes was eventually taken by ambulance to Northwest Regional Hospital where his relatively minor physical injuries were attended to. He was later diagnosed with post traumatic stress syndrome.
The airplane crash was caused by the failure of the aluminum alloy propeller hub which holds the three blades together, and which was manufactured by Hartzell. A propeller hub is comprised of two halves which are bolted together capturing the bases of the propeller blades within. Thus, the base of each propeller blade is encircled by a retaining collar formed by the joining together of the two halves of the hub. On the Transavia plane, both halves of the retaining collar for the Number 3 blade failed causing the blade itself to separate from the propeller assembly in flight. In addition, one half of the retaining collar for the Number 1 blade failed, but that blade remained connected to the assembly, held on by the remaining half of the retaining collar. Blade Number 2's retaining collar remained intact.
On October 10, 1996, Stokes and the Jones brothers filed a complaint in the Common Pleas Court of Miami County, Ohio, asserting claims of negligence, products liability, and breach of express or implied warranty against Hartzell whose principal place of business is in Piqua, Miami County, Ohio.[1] Following a jury trial, Hartzell was found not to have been negligent in designing or manufacturing the propeller assembly. Stokes and the Jones brothers each filed a timely notice of appeal and we consolidated the two cases on January 20, 1999.
For purposes of clarity, we discuss additional relevant facts under the assignment of error to which they relate, the first of which reads as follows:
 The trial court committed prejudicial error when it reversed its order of October 17, 1997 requiring the Defendants [sic] to supplement its answers to Plaintiff's expert witness interrogatories in accordance with Civil Rule 265 [sic] and Walker v. Holland, [sic] (January 24, 1997), Montgomery App. No. 15765. [sic] unreported[,] not later than the discovery deadline of December 19, 1997 or have the court exclude any such testimony at trial when the court over ruled [sic] Plaintiff's motion in liminie [sic] on January 28, 1998 less than one week prior to trial.
In their first assignment of error, Plaintiffs contend the trial court erred in permitting Hartzell to present expert witness testimony after having previously rendered a decision stating such testimony would be excluded if Hartzell failed to seasonably supplement its answers to Plaintiffs' expert witness interrogatories. Plaintiffs claim Hartzell's supplementation of its answers to the expert witness interrogatories came less than two weeks prior to trial, long after the discovery deadline had passed, and was consequently not seasonable. Therefore, Plaintiffs contend, the court's failure to exclude Hartzell's expert witness testimony was erroneous.
The record reflects that when Plaintiffs filed their complaint, they appended to it expert witness interrogatories directed to Hartzell. On November 14, 1996, Hartzell forwarded its responses to the expert witness interrogatories to Plaintiffs, wherein Hartzell provided no information as to the qualifications or substantive testimony of any expert witness, instead stating it had no expert witnesses as yet. At the same time, Hartzell served Plaintiffs with its own expert witness interrogatories. By a scheduling order entered on February 27, 1997, the trial court set December 19, 1997, as the date by which discovery must be completed, and trial was set for February 3, 1998.
On October 2, 1997, Hartzell filed the first of what was to become a constant flow of motions to compel discovery by both parties. Hartzell claimed therein that it had received no responses to its expert witness interrogatories directed to Plaintiffs in November of 1996. The next day, the court ordered Stokes[2] to complete and return the expert witness interrogatories propounded by Hartzell within fourteen days or risk dismissal of his complaint. On October 15, 1997, Stokes forwarded his responses to Hartzell's expert witness interrogatories to Hartzell.
Two days later, the trial court rendered its decision in response to a motion to compel discovery allegedly filed by Stokes the day before.[3] The court stated that although Hartzell's earlier responses to Stokes' interrogatories were not necessarily incomplete since Hartzell simply did not have any expert witnesses at that time, Hartzell was nevertheless under a duty to seasonably supplement its answers to the interrogatories pursuant to Civ.R. 26(E) and Walker v. Holland (Jan. 24, 1997), Montgomery App. No. 15765, unreported. Failure to do so, the court warned, would result in exclusion of any expert testimony not in compliance with the Rule. The court also noted that although the discovery deadline was not until December 19, 1997, "seasonably supplement" meant disclosure at approximately the time retained, not disclosure at the last possible moment. Because Stokes' motion was one for compelling discovery instead of excluding expert witness testimony, however, the court overruled the motion.
On January 13, 1998, apparently taking a cue from the court's October 17, 1997, decision, Stokes filed a motion in limine to exclude Hartzell's expert witness testimony in regard to the cause of the airplane crash as a consequence of Hartzell's failure to respond to Stokes' expert witness interrogatories. About a week later, Hartzell served Stokes with its answers to the expert witness interrogatories propounded by Stokes in October of 1996.
On January 26, 1998, a hearing was held on several pending motions, one of which was Stokes' motion to exclude Hartzell's expert witness testimony. There, the trial judge questioned Stokes as to how he was prejudiced by Hartzell's waiting until after the close of discovery to provide him with the substance of its expert witnesses' testimony, to which Stokes replied that he was deprived of his opportunity to depose Hartzell's experts. When the court asked Stokes if he wanted a continuance, Stokes answered "Absolutely not," and argued that instead, Hartzell's expert witnesses should not be permitted to testify at trial.
The trial court issued a decision in the matter on January 28, 1998, stating, inter alia, that any expert not specifically listed on Hartzell's August 25, 1997, designation of expert witnesses would not be permitted to testify at trial. In addition, the court noted that in spite of Stokes' claim that Hartzell had not complied with the court's October 17, 1997, order to seasonably supplement its responses to Plaintiffs' expert witness interrogatories, Hartzell had responded to the interrogatories in December of 1997, an apparent reference to a settlement statement Hartzell claims to have submitted to the court and Plaintiff at the end of that month, but which was not made a part of the record. The court characterized discovery, as it was conducted in this case, quite aptly as "a game of no-peek poker," and refused to limit or exclude the testimony of any expert named by either party in their initial disclosures of their expert witnesses.
In his brief to this court, Stokes claims the trial court's January 28 decision was error because it allowed Hartzell to avoid divulging its theory of why the propeller hub failed until less than two weeks before the trial was to begin. Specifically, Stokes contends that testimony from Hartzell's experts, Walter Voisard, Roch Shipley, Jack Eggspuehler, and Charles Berry, should have been excluded by the trial court because Hartzell failed to seasonably supplement its responses to Plaintiffs' expert witness interrogatories pursuant to the court's October 17, 1997 order and Civ.R. 26(E)(1)(b). That rule imposes a duty on a party to seasonably supplement his or her responses to an opponent's expert witness interrogatories respecting any question directly addressed to the "identity of each person expected to be called as an expert witness at trial and the subject matter on which he or she is expected to testify." In Shumaker v. Oliver B. Cannon Sons,Inc. (1986), 28 Ohio St.3d 367, the Ohio Supreme Court stated that one objective of the Civ.R. 26(E)(1)(b) was to "provide opposing counsel with updated and complete discovery regarding the substance of expert testimony. This duty to supplement responses on the subject matter of expert testimony is necessary because preparation for effective cross-examination is especially compelling where expert testimony is to be introduced." Id. at 370.
Testimony of an expert witness, however, is not in all cases inadmissible when a party fails to comply with a trial court's pretrial discovery order. Generally, it is within the trial court's discretion to determine the appropriate sanction for a discovery infraction. Huffman v. Hair Surgeon, Inc. (1985),19 Ohio St.3d 83, 87; Billman v. Hirth (1996), 115 Ohio App.3d 615,619, citing Russo v. Goodyear Tire Rubber Co. (1987),36 Ohio App.3d 175, 178. See also Civ.R. 37(B)(2). Exclusion of otherwise reliable and probative evidence is a severe sanction, however, and it has been recognized that even where the undisclosed testimony of an expert witness creates a substantial likelihood of surprise and there is an indication that one party deliberately disrupted the free flow of information between the parties, the court may grant a continuance to allow the other side time to find and present rebuttal testimony as an alternative to excluding the expert testimony. Earl Evans Chevrolet, Inc. v. General MotorsCorp. (1991), 74 Ohio App.3d 266, 283. Moreover, a trial court has broad discretion in the admission and exclusion of evidence and unless it clearly abuses its discretion and the opposing party is materially prejudiced thereby, a reviewing court should be slow to interfere. Wimmers v. Camacho (July 27, 1993), Montgomery App. No. 13272, unreported.
We find the trial court in the present case did not abuse its discretion for the following reasons. First, as we noted above, Stokes was offered a continuance by the court at the hearing on his motion to exclude Hartzell's expert witnesses' testimony. No doubt the court was of the mind that a continuance would provide Stokes with an opportunity to depose Hartzell's witnesses and/or secure additional expert witnesses to rebut the testimony Hartzell's experts were expected to provide. Stokes emphatically rejected the court's offer and urged the court to exclude the testimony instead. Wisely, but unfortunately for Stokes, Civ. R. 37 does not enable a party to choose the sanction it wishes to be imposed on its opponent for failing to make discovery. That determination is for the trial court alone to make. Here, the hearing transcript shows that the trial court considered continuance an appropriate and just sanction for Hartzell's discovery violation. Having rejected the court's offer to provide Stokes with additional time to prepare for trial, Stokes cannot now claim that the court's failure to impose a more severe sanction was error.
 We note that in his brief Stokes relies on the trial court's statements in its October 17, 1997, decision to the effect that this court's decision in Walker, supra, makes it clear that a party's failure to supplement its responses to an opponent's expert witness interrogatories will result in the expert's testimony being inadmissible at trial. A more accurate synopsis of our decision in Walker, however, and one that is consistent with Civ.R. 37, would be that such conduct by a party may result in the expert's testimony being excluded. Nothing in Walker
suggests that expert testimony will always be inadmissible as a consequence of a party's noncompliance with Civ.R. 26(E).
Moreover, we have previously noted that "[i]n general, the severity of the sanction should depend on whether the party who submitted the discovery request was prejudiced by the failure of the opposing party to act, regardless of that party's motive or intent." Soloman v. Excel Marketing, Inc. (1996),114 Ohio App.3d 20, 29, citing Wright v. Structo, Div. of Eljir Mfg.,Inc. (1993), 88 Ohio App.3d 239, 244. Here, although Stokes was provided with Hartzell's designation of expert witnesses, including their names, addresses, and fields of expertise, on August 25, 1997, more than five months prior to trial, he made no attempt during that time to depose the experts whose testimony he contends should have been excluded at trial. Furthermore, at the January 26, 1999, hearing on Stokes' motion to exclude, Hartzell offered to make their expert witnesses available to Stokes so he could depose them, but Stokes failed to take advantage of that opportunity. We are unable to conclude that the prejudice Stokes claims to have suffered at trial was a result of the trial court's denial of his motion to exclude since it is at least equally likely that any such prejudice flowed from his own obstinate refusal to avail himself of the opportunity to depose Hartzell's expert witnesses.
Finally, we are not convinced that Stokes properly preserved for appeal the error he claims with respect to defense witnesses Voisard and Shipley. The Ohio Supreme Court has stated the following respecting motions in limine:
 The function of the motion as a precautionary instruction is to avoid error, prejudice, and possibly a mistrial by prohibiting opposing counsel from raising or making reference to an evidentiary issue until the trial court is better able to rule upon its admissibility outside the presence of a jury once the trial has commenced.
* * *
 Thus, a motion in limine, if granted, is a tentative, interlocutory, precautionary ruling by the trial court reflecting its anticipatory treatment of the evidentiary issue.
* * *
 An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial. [Quoting Palmer, Ohio Rules of Evidence Rules Manual (1984), at 446.]
* * *
 At trial it is incumbent upon a defendant [or plaintiff], who has been temporarily restricted from introducing evidence by virtue of a motion in limine, to seek the introduction of the evidence by proffer or otherwise in order to enable the court to make a final determination as to its admissibility and to preserve any objection on the record for purposes of appeal.
 Grubb, supra at 201-3. See also Garrett v. Sandusky (1994), 68 Ohio St.3d 139, 141; Renfro v. Black
(1990), 52 Ohio St.3d 27, 33.
It is true that Voisard and Shipley both testified to a theory of the hub failure that was not disclosed even in Hartzell's delayed responses to Stokes' expert witness interrogatories. Specifically, and over Stokes' objection, Voisard testified that the propeller blades on the hub in question were of unequal length and weight as a result of a high-powered strike to the propeller blades which threw the propeller assembly out of balance weakening the hub and making it susceptible to fatigue cracking and eventually blade separation. Tr. at 1342-76. Shipley also testified and opined that the fatigue cracks in the hub were caused by stresses or loads that exceeded the capability of the material resulting, at least in part, from the variation in size and weight of the propeller blades as a consequence of previous blade damage. Tr. at 1595. Although Stokes objected at times to Shipley's testimony for lack of foundation or authentication, he never objected to it on grounds that it was not properly disclosed prior to trial, nor did he renew at trial his objection to Shipley's testimony following the court's denial of his motion inlimine to exclude Hartzell's expert witnesses as a sanction for noncompliance with Civ.R. 26(E). Thus, any error resulting from the admittance of Shipley's testimony has not been preserved and is waived. State v. Grubb (1986), 28 Ohio St.3d 199, 203. A further ramification of Stokes' failure to object to Shipley's testimony is that it renders any error flowing from the admittance of Voisard's essentially cumulative testimony harmless.
 For the foregoing reasons, Plaintiffs' first assignment of error is overruled., Plaintiffs' second and third assignments of error both claim that the trial court erred in excluding certain documentary evidence relating to Hartzell propeller hub failures, and will be addressed together. The two assigned errors are as follows:
 The trial court committed prejudicial error when it granted Defendant's motion in limine excluding all reports or occurrences involving or pertaining to Hartzell propeller hubs other than the propeller hub in question in this case.
The trial court committed prejudicial error when it granted Defendant's oral motion in liminie [sic] to exclude reference to Service Bulletin 165, Exhibit 39 and portions of the report of Dr. [Romeyn's] testimony of the Australian Civil Air Authority.
In his second assignment of error, Stokes contends the trial court erred in ruling that Plaintiffs' Exhibit 56, a document entitled "Hartzell HC-()3Y()-() Compact Propeller Hub Failure Summary by Aircraft," was inadmissible. Stokes claims the court did so because it found that the fatigue cracks leading to the hub failures listed on the document initiated on a different part of the hub than did the cracks on the hub in the present case. This was not, however, the reason the evidence was ruled inadmissible. Instead, the trial court correctly, in our view, found that the document had not been properly authenticated, was not self-authenticating, and contained no information as to when it was prepared or by whom. Tr. at 443. Since Stokes advances no argument that these findings of the court were erroneously arrived at, we are compelled to overrule his second assignment of error.
In his third assignment of error, Stokes claims the trial court erred in granting Hartzell's motion in limine to exclude from evidence testimony and/or presentation of a second document, Hartzell Service Bulletin 165 which was marked for identification purposes at trial as Plaintiffs' Exhibit 39. The bulletin, dated October 3, 1989, describes the procedure to be used when inspecting Hartzell hubs for cracks which typically originate in the threads of a grease fitting hole on the side of the hub and can lead to blade separation.
We observe that App.R. 16(A)(3) mandates that appellants include within their appellate briefs "[a] statement of the assignments of error presented for review, with reference to the place in the record where each error is reflected." In addition, pursuant to App.R. 16(D), "[i]f reference is made to evidence, the admissibility of which is in controversy, reference shall be made to the pages of the transcript at which the evidence was identified, offered, and received or rejected." Compliance with App.R. 16 is made all the more necessary in this case in light of the nearly 2,500 pages of pretrial and trial transcripts in the record before us. We are also dismayed to note that the index of exhibits contained within the trial transcript include no page numbers to aid this court in its review, as is required by App.R. 9(B)(6). Furthermore, Stokes does not contend that he sought to introduce the evidence by proffer or any other manner at trial. Because Stokes has failed to comply with App.R. 16, makes no suggestion that he properly preserved the issue of the admissibility of Service Bulletin 165 for appeal by raising it at trial or by making a proffer of the evidence, and devoted none of his argument to the nature of the trial court's error in excluding portions of the Australian Civil Air Authority report mentioned in the heading of his assigned error, he has waived his right to object to those evidentiary issues on appeal. Grubb, supra at 203; App.R. 12(A)(2).
Stokes' fourth assignment of error is set forth as follows:
 The trial court committed prejudicial error when it granted summary judgment in the claims of Jones.
In July, 1997, Hartzell moved for summary judgment as to the Jones brothers' claims on grounds that they had been filed after the applicable statute of limitations had run. On September 12, 1997, after the trial court denied the motion, Hartzell filed a motion to reconsider, to which the Jones brothers never responded. On October 2, 1997, the trial court rendered its decision finding that the Jones brothers were required to bring their cause of action within two years of the airplane crash, which they failed to do. The court granted summary judgment in favor of Hartzell as to the Jones brothers' claims.
The Jones brothers do not contest that a two-year statute of limitations applies to their claims. Instead, their contention is that the statute of limitations did not begin to run on the date of the airplane crash, as was held by the trial court, and that its running was not triggered until the Jones brothers became aware that the damage suffered was related to Hartzell's conduct. Given that the jury found no negligence on Hartzell's part, and that our findings after reviewing Plaintiffs' first three assignments of error have provided no basis upon which to reverse the court's judgment, however, we conclude that the issue concerning the court's grant of summary judgment against the Jones brothers has been rendered moot. Accordingly, we need not decide this assignment of error, and decline to do so. App.R. 12(A)(1)(c).
In the fifth and final assignment of error of this consolidated appeal, the Jones brothers contend as follows:
 The trial court committed prejudicial error when it awarded costs to Hartzell from Jones.
The Jones brothers contend that since their claims against Hartzell were disposed of by summary judgment prior to trial, it was error for the trial court to order them to pay any portion of Hartzell's legal fees accrued between commencement of the lawsuit and the date of trial. They do not dispute that in general, prevailing parties are entitled to reimbursement of at least a portion of their legal fees under Australian law, or that Australian law governs the issue presented under this assignment of error.
In the trial court's judgment entry of March 2, 1998, it ordered that Hartzell recover its costs from Stokes alone. Plaintiffs appealed, but we found that judgment entry to be lacking final appealability because the trial court had not determined the amount of Hartzell's costs to be recovered; we consequently dismissed the appeal. A hearing was held to determine the amount of Hartzell's recoverable costs, after which the trial court rendered an amended judgment entry ordering Stokesand the Jones brothers to pay $320,337.73 of Hartzell's costs. We note that the record before us contains no transcript of the hearing on the issue of Hartzell's legal fees, and that the Jones brothers did not request that one be transmitted when they filed their Civil Docket Statement in connection with their appeal to this court.
In Knapp v. Edwards Laboratories (1980), 61 Ohio St.2d 197,199, the Ohio Supreme Court observed as follows:
 The duty to provide a transcript for appellate review falls upon the appellant. This is necessarily so because an appellant bears the burden of showing error by reference to matters in the record. See State v. Skaggs (1978), 53 Ohio St.2d 162 [parallel cite omitted]. This principle is recognized in App.R. 9(B), which provides, in part, that "* * * the appellant shall in writing order from the reporter a complete transcript or a transcript of such parts of the proceedings not already on file as he deems necessary for inclusion in the record * * *." [Footnote omitted.] When portions of the transcript necessary for resolution of assigned errors are omitted from the record, the reviewing court has nothing to pass upon and thus, as to those assigned errors, the court has no choice but to presume the validity of the lower court's proceedings, and affirm.
A preliminary question to our consideration of any assignment of error is whether it was properly preserved in the proceedings below. We note that nothing in the record as it has been transmitted contains any indication that the issue of the Jones brothers' payment of Hartzell's legal fees in light of the earlier summary judgment was even raised below. On this record, we are unable to determine whether the Jones brothers' assigned error has been preserved and is therefore properly before us.
Moreover, without the transcript of the hearing, we cannot say whether the trial court's decision to include the Jones brothers as obligors, along with Stokes, on Hartzell's costs was error. Such determinations are committed to the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. Without the hearing transcript, we cannot know what evidence was presented to the trial court, or whether the court's decision based on that evidence was error.
Accordingly, because the transcript of the hearing on Hartzell's costs is necessary for the resolution of the fifth assignment of error, and because it has been omitted from the record, we have nothing to pass upon and must instead presume the validity of the trial court's proceedings and overrule the error assigned. Knapp, supra.
Having overruled Plaintiffs' first, second, and fifth assignments of error, found the issues raised in their third assignment of error to have been waived, and found the fourth assignment of error to be moot, the amended judgment of the trial court is affirmed.
WOLFF, J., concurs.
[1] An earlier complaint relating to the plane crash had previously been voluntarily dismissed. Also, Plaintiffs later acknowledged that products liability law as it existed in Australia on the date of the plane crash was basically synonymous with the law of negligence. Furthermore, Plaintiffs requested no jury instructions on the breach of warranty claim, nor did they brief that cause of action in their memorandum to the trial court on the applicable Australian law. Consequently, only the negligence claim was presented to the jury at trial.
[2] By this time, the Jones brothers' claims had been disposed of via the court's grant of summary judgment in Hartzell's favor, as is discussed more fully under Plaintiffs' fourth assignment of error.
[3] We use the word "allegedly" because no such motion by Stokes appears in the record or in the transcript of docket and journal entries. This apparent omission does not, however, impact our decision one way or the other.