RUSSO ET AL., APPELLANTS, *v.* GOODYEAR TIRE & RUBBER COMPANY ET AL., APPELLEES.

(No. 12790—Decided March 18, 1987.)

*James R. Graves,* for appellants.
*Edward C. Kaminski,* for appellees.

GEORGE, J. This case involves the discovery sanction of dismissal of a class action for the plaintiffs' disobedience of an order to compel answers to interrogatories. The action was filed on April 20, 1979 and dismissed on July 31, 1986.

Plaintiff-appellant John Russo and seven other named plaintiffs filed a complaint on behalf of themselves and other members of the class, being employees of defendant-employer Goodyear Tire & Rubber Company ("Goodyear"). The members of the class claimed that Goodyear made certain wrongful payroll deductions for reimbursement of an overpayment of supplemental unemployment benefits ("SUB").

Goodyear counterclaimed alleging that it had made overpayments to the

class members from the SUB fund. The overpayments resulted from the lack of an offset for federal benefits (Trade Readjustment Allowance benefits ["TRA"]) received by the members of the class.

The SUB plan created a trust fund for the purpose of paying union members during periods of layoffs and reduced working hours. During 1977 and 1978 the class members became eligible to receive SUB benefits. At about the same time, the class members also became eligible for TRA benefits. Section 2271 *et seq.,* Title 19, U.S. Code.

To enable an employee to receive TRA benefits, Goodyear was required to provide the Ohio Bureau of Employment Services ("OBES") with a list of eligible employees. OBES then distributed the TRA funds to the class members. This benefit was paid in addition to the SUB benefit.

The collective bargaining agreement between Goodyear and the members' union provided that eligible employees could receive SUB pay up to eighty percent of each employee's weekly straight time pay. Goodyear provided the funds for the SUB benefits and acted as trustee of the plan. Under Section 7, Article II of the plan, overpayments were to be repaid to the trustee.

In administering the SUB plan Goodyear, as trustee, determined that the TRA benefits constituted "other compensation" as that term is used in Section 1(a), Article II of the plan, which provides:

"*The Regular Benefit [the SUB benefit]* payable to an eligible Employee for any Week beginning on or after the effective date of this Agreement *shall be an amount, which, when added to his State Benefit and Other Compensation, will equal 80% of his Weekly Straight Time Pay* for each Week for which he is eligible for a Regular Benefit." (Emphasis added.)

As a result, the SUB benefit could be offset by the amount of the TRA benefit paid to an employee so as to bring the total payment within the eighty-percent limitation. Overpayments resulted. In March 1979, Goodyear began deducting $25 per week from wages due each class member for the overpayments made from the SUB fund, and $15 per benefit payment from payments due class members on layoff and members on short work-week status.

Prior to instituting the payroll deduction procedure, Goodyear mailed each class member an authorization form which would allow OBES to release information to Goodyear as to the amount of TRA payments made. Most class members failed to return the authorization. Next, Goodyear wrote a letter to each class member indicating that an overpayment had been made and requested that he make reimbursement. Again, few responses were forthcoming.

Once the plaintiffs brought this action, Goodyear submitted interrogatories to the members of the class asking that they identify themselves and indicate the amount of TRA benefits each member had received. Although eight members were named, not one responded. The named plaintiffs took the position that the information sought was exclusively within the possession of the OBES and was not available to them, and that to answer was unduly burdensome. There is no dispute that the information sought by Goodyear is relevant and discoverable. Civ. R. 26(B).

The trial court first granted the plaintiffs a protective order. Goodyear then sought the requested information from OBES. OBES refused to release such information on the basis that it was confidential under federal and state law. Section 617.57, Title 20, C.F.R., and R.C. 4141.21. On September 9, 1985, the trial court vacated its

protective order and then ordered the plaintiffs to comply with discovery, stating, in part:

"The amount of TRA benefits received by each class member is needed to determine the amount of Defendants' setoff against any judgment which might be rendered by Plaintiffs. It is in the best interest of justice and all of the parties to resolve all issues raised in this action in a single lawsuit. This cannot be done if the amounts of TRA benefits received by each class member are not known. For Plaintiffs to initiate this lawsuit, then attempt to conceal relevant information from Defendants, contravenes the language and the spirit of the discovery rules.

"Accordingly, this Court's Order allowing Defendants to obtain the names of class members and the amount of benefits received from Plaintiffs is affirmed. Plaintiffs are ordered to provide this information to Defendants or this lawsuit will be dismissed."

When a pretrial conference was held on June 9, 1986, the answers were not yet provided to Goodyear. At that time, the trial court once again afforded the class members an opportunity to comply with the order of discovery so as to avoid the sanction of dismissal. Still, discovery was not provided, and on July 31, 1986, the trial court dismissed the action, stating:

"Dismissal of Plaintiffs' claims with prejudice is an appropriate sanction for Plaintiffs' failure to comply with this Court's discovery Order. *Tingler* v. *Buckeye Fireworks Mfg. Co., Inc.,* 12 Ohio App. 3d 58, 12 OBR 199 (1983). Prior notice of this Court's intention to dismiss Plaintiffs' lawsuit was given through the Court's discovery Order dated September 9, 1985, as well as in person to Plaintiffs' counsel at the pre-trial conference conducted on June 9, 1986. Such notice meets the requirements of Civil Rule 41(B)(1) as discussed in *Ohio Fur-niture Company* v. *Mindala,* 22 Ohio St. 3d 99 (1986), and *Bogard* v. *Pennsylvania Crusher Corp.* (9th District Court of Appeals [Summit Cty.] Case No. CA-11809, decided February 6, 1985).

"WHEREFORE, it is hereby ORDERED that Plaintiffs' claims in this matter are dismissed in their entirety and with prejudice pursuant to Civil Rule 37(B)(2)(c) for Plaintiffs' failure to comply with this Court's discovery Order."

It is from this dismissal that the class members appeal, claiming two errors.

### Assignment of Error I

"The trial court erred in dismissing plaintiffs' amended complaint for non-compliance with his order to comply with pre-trial discovery and divulge to defendants information which is solely within the possession of defendants or under the purview of the Ohio Bureau of Employment Services."

There are approximately 1,384 employees who constitute the members of the class represented by the named plaintiffs. These members were employees who were laid off or worked shorter hours due to the intervention of foreign competition in the tire market. As a result of the foreign competition Goodyear made adjustments in its work force prior to 1979 and subsequently found it necessary to close Plant No. II.

Goodyear propounded the following interrogatory to the plaintiffs:

"State the full amount, and the amount per week, received by you in the form of payments from the Trade Readjustment Act (TRA) of 1974."

This interrogatory was one of seven. The other interrogatories requested information as to the dates that the employees were on layoff status; the amount of compensation received from the state fund; the amounts received from the SUB fund;

whether or not deductions were being made from paychecks to reimburse the SUB fund; the hourly wage rate of the employee prior to layoff; and whether the employee intended to make arrangements to repay any overpayments received under the SUB plan.

Goodyear appended a list of names and addresses of employees it had previously given to OBES as being eligible to receive TRA benefits. This list gave the plaintiffs the ability to identify their class and to supply the answers requested. However, not one member of the class, named or unnamed, responded to the interrogatories.

From the record there are only two sources within Ohio that have the information concerning the payment of TRA benefits. One source, OBES, is statutorily prohibited from disclosing such information. R.C. 4141.21. The second source is the individual recipients of the benefits — each plaintiff who is a member of the class. Each plaintiff received the TRA benefits and each plaintiff possesses the information necessary to comply with Goodyear's discovery request and the trial court's discovery order. The plaintiffs have failed to comply.

While the plaintiffs urge that Goodyear sought information which was already within its possession, the record does not support this conclusion. The TRA benefits were channelled through OBES and not Goodyear.

More significantly, the plaintiffs, while using discovery procedures to obtain information from Goodyear, did not respond in any manner to Goodyear's request for discovery. Plaintiffs made no attempt to provide any response to the information requested by answering even less than asked. There was a total lack of effort to provide any response to the interrogatories.

Plaintiffs indicate that their lack of response was due to their inability to answer and not a willful refusal or bad faith. However, the failure to offer any answer, in light of the trial court's notice that continued failure to answer would result in dismissal, cannot be construed as a good faith effort to comply. Civ. R. 41(B)(1); *Ohio Furniture Co.* v. *Mindala* (1986), 22 Ohio St. 3d 99, 22 OBR 133, 488 N.E. 2d 881.

Civ. R. 37(B)(2) provides various sanctions for a failure to comply with discovery. The range includes the imposition of expenses for costs incurred in obtaining the required discovery to that of dismissal of the action, dismissal being the most harsh. Civ. R. 37(B)(2)(c).

It is exclusively within the trial court's discretion to determine the particular sanction to be imposed for the particular infraction committed. The appropriateness of the choice is reviewable to the extent that an abuse may have occurred in the exercise of the trial court's discretion in the selection of the sanction. Thus, the trial court must consider the posture of the case and what efforts, if any, preceded the noncompliance and then balance the severity of the violation against the degree of possible sanctions, selecting that sanction which is most appropriate.

In deciding, the trial court should look to several factors: the history of the case; all the facts and circumstances surrounding the noncompliance, including the number of opportunities and the length of time within which the faulting party had to comply with the discovery or the order to comply; what efforts, if any, were made to comply; the ability or inability of the faulting party to comply; and such other factors as may be appropriate.

With the background of the noncompliance in mind, the trial court must then weigh the severity of the violation and balance it against the degree of possible sanctions. A violation

may call for different degrees of sanctions under different circumstances. The trial court should then select that sanction which most appropriately fits the violation, in the context of the case.

The reviewing court, in looking at the sanctions so imposed, cannot substitute its judgment for that of the trial court. Its concern is only that the trial court examined the right things and did not act arbitrarily. Thus, the appropriateness of the choice of the sanction imposed is reviewable to the extent that the trial court may have abused its discretion by being arbitrary in selecting too harsh or too lenient a sanction.

If the reviewing court, in examining those factors required to be considered by the trial court, determines that the degree of the sanction is disproportionate to the seriousness of the infraction under the facts of the case, then an abuse has been shown to exist. The judgment, then, is reversible. *Rauchenstein* v. *Kroger Co.* (1981), 3 Ohio App. 3d 178, 3 OBR 204, 444 N.E. 2d 445.

Here the plaintiffs claim their failure to comply with the discovery order was due to their inability rather than any willfulness or bad faith. However, once having been ordered to provide discovery, the plaintiffs cannot stand mute or stand upon the same reason given for their failure to respond previously considered by the court. They must satisfy the trial court that their continued refusal to comply is genuinely founded upon a good faith excuse. There must be a showing that their continued failure to comply is not the result of any willfulness or bad faith on their part. This they have not done.

The plaintiffs' inability to obtain the information sought by Goodyear is not borne out by the record. The named plaintiffs individually possess some knowledge which would answer at least a portion of Goodyear's in-

quiry. They have refused to attempt an answer.

Under the facts of this case, the plaintiffs' continued refusal to comply with the court's order of discovery justified the most severe sanction provided under the rules — dismissal. Civ. R. 37(B)(2)(c); Annotation (1974), 56 A.L.R. 3d 1109, 1120, Section 6[a]. No abuse of discretion has been shown in the trial court's dismissal of this action. *Dafco, Inc.* v. *Reynolds* (1983), 9 Ohio App. 3d 4, 9 OBR 4, 457 N.E. 2d 916; *Tingler* v. *Buckeye Fireworks Mfg. Co.* (1983), 12 Ohio App. 3d 58, 12 OBR 199, 465 N.E. 2d 1336.

This assignment of error is overruled.

Assignment of Error II

"Dismissal of plaintiffs' complaint for failure to divulge information to defendants during pre-trial discovery proceedings, when such information is privileged by Act of Congress and by agreement between the Secretary of the U.S. Department of Labor and Ohio Bureau of Employment Services, and is not ascertainable by plaintiffs, is violative of the due process rights of plaintiffs, contrary to Article I, Section 16 of the Constitution of the State of Ohio and the 14th Amendment to the United States Constitution."

Plaintiffs' claim their due process rights were violated by the dismissal because the information they failed to provide was privileged and unascertainable by them.

Although there are constitutional limits on the power of the trial court to dismiss an action, even in aid of its own valid purposes, *Societe Internationale* v. *Rogers* (1958), 357 U.S. 197, 209, the use of the sanction of dismissal for a failure to comply with a discovery order has been held valid where the actions of the faulting party create a presumption of willfulness or bad faith. *Hammond Packing Co.* v. *Arkansas*

(1909), 212 U.S. 322, and *Furcello* v. *Klammer* (1980), 67 Ohio App. 2d 156, 21 O.O. 3d 454, 426 N.E. 2d 187. Nothing in the record mitigates the plaintiffs' failure to answer, *Natl. Hockey League* v. *Metropolitan Hockey Club, Inc.* (1976), 427 U.S. 639, and the trial court is entitled to employ the sanction it deems appropriate.

As discussed in reviewing the first assignment of error, the information requested was neither privileged nor unascertainable. Where the information is not privileged and is shown to be ascertainable, and the faulting party repeatedly fails to comply with the discovery order, there is sufficient evidence to create a presumption of a willful or bad faith refusal to comply.

Here the plaintiffs had the opportunity to apply for another protective order and to be heard on Goodyear's motion for an order compelling discovery. They did not timely offer an explanation or an excuse for their failure to comply. Under such circumstances the imposition of a Civ. R. 37(B)(2) sanction is not a deprivation of the constitutional right of due process. *Ward* v. *Hester* (1972), 32 Ohio App. 2d 121, 61 O.O. 2d 124, 288 N.E. 2d 840, paragraph one of the syllabus, affirmed (1973), 36 Ohio St. 2d 38, 65 O.O. 2d 181, 303 N.E. 2d 861. The plaintiffs were given sufficient notice that their continued failure to answer the interrogatories would result in dismissal, and they were given numerous opportunities to answer or provide satisfactory reasons for not answering. Under the facts of this case, the plaintiffs were not deprived of their constitutional right of due process.

Therefore, this assignment of error is likewise overruled and the judgment of the trial court is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., and BAIRD, J., concur.