OPINION
{¶ 1} Plaintiff-appellant, Tara R. Thompson, appeals the judgment of the Ohio Court of Claims, which dismissed appellant's medical malpractice suit against defendant-appellee, The Ohio State University Hospitals, pursuant to Civ.R. 41(B)(1). *Page 2 
 {¶ 2} On June 27, 2005, appellant filed a medical malpractice complaint against appellee. Appellant noted in the complaint that she had previously filed a medical malpractice complaint against appellee, but that complaint was subsequently withdrawn without prejudice on June 26, 2004. Appellant further alleged the following in her complaint:
 * * * Commencing in or about approximately March of 2001 and continuing at least through the remainder of 2001, [appellant] Tara Thompson submitted herself to the exclusive care and control of [appellee] for evaluation and treatment of morbid obesity. On or about March 26, 2001, she underwent a Roux-en-Y gastric bypass operation and umbilical hernia repair performed by Charles H. Cook, M.D. at [appellee's] hospital facility. Thereafter, and on or about April 2, 2001, May 2, 2001, May 29, 2001, June 1, 2001, June 28, 2001 and July 10, 2001, [appellant] Tara Thompson was readmitted to [appellee's] hospital facility for extreme nausea and vomiting, during which time she was experiencing additional complications and symptoms, including, but not limited to, progressive weakness, decreasing sensation bilaterally in her legs and a decreasing ability to ambulate, which eventually resulted in her becoming a paraplegic.
 {¶ 3} The trial court scheduled a status conference for October 21, 2005, but, on that date, the court was unable to contact appellant's trial counsel. The trial court scheduled another status conference for November 30, 2005, but, on that date, appellant's trial counsel was unavailable.
 {¶ 4} In February 2006, appellee served upon appellant a request for production of documents and a set of interrogatories. Appellant failed to respond to the above discovery requests within the applicable time limits denoted in Civ.R. 33 and 34. On April 13, 2006, appellee filed a motion to compel discovery, but appellee withdrew the motion on April 21, 2006, because appellant's trial counsel agreed to provide responsive *Page 3 
materials no later than May 5, 2006. Appellant's trial counsel had indicated to appellee's counsel that his attention had been "divided" due to his tending to his sick mother.
 {¶ 5} On May 19, 2006, appellee renewed its motion to compel discovery, indicating that, although appellant answered appellee's interrogatories, appellant failed to produce the requested documents. On June 2, 2006, the trial court ordered the production of outstanding discovery by June 7, 2006. In doing so, the trial court also stated:
 * * * On May 24, 2006, the court attempted to conduct a previously scheduled mediation with the parties; however [appellant] and her [trial] counsel failed to appear. * * *
 Upon review of the file, the court notes that [appellant's trial] counsel also failed to attend the conferences previously scheduled in this case for October 21, 2005, and November 30, 2005. * * *
Thereafter, on June 6, 2006, appellant's trial counsel filed a "Demonstration of Compliance with Request for Production of Documents[.]"
 {¶ 6} Also, during the procedural history of appellant's case, on November 14, 2005, the trial court issued a journal entry noting that the medical malpractice trial was set for November 27, 28, and 29, 2006, and that appellant "shall furnish [appellee] with the names of expert witnesses and a copy of their reports on or before May 30, 2006."
(Emphasis sic.)
 {¶ 7} In the June 6, 2006 "Demonstration of Compliance with Request for Production of Documents[,]" appellant's trial counsel "acknowledge[d] that [appellant's] ability to proceed in this matter is largely dependant on the ultimate ability of securing *Page 4 
an expert witness[.]" However, appellant's trial counsel stated that such a "task * * * has proved difficult to date."
 {¶ 8} On June 21, 2006, appellee filed a Civ.R. 56(C) motion for summary judgment stating:
 Pursuant to a November 14, 2005 entry from this Court, [appellant] was required to provide [appellee] with her expert report before May 30, 2006. As of the date of filing this motion, June 21, 2006, [appellant] has failed to furnish [appellee] with the names of her expert witnesses and a copy of their reports. [Appellant] has never supplied any information about the identity of her experts, the production of expert reports, or any specific criticisms of the care and treatment rendered by an agent/employee of [appellee].
 {¶ 9} In a memorandum opposing appellee's summary judgment motion, appellant's trial counsel raised res ipsa loquitor, "an evidentiary rule which permits, but does not require, the jury to draw an inference of negligence" under certain circumstances. Jennings Buick, Inc. v.Cincinnati (1980), 63 Ohio St.2d 167, 169. However, appellant's trial counsel then acknowledged that appellant "has the burden of furnishing an expert witness in support of [her] case. [Appellant] understands the implications if [she] is unable to meet that burden in short order." Appellant's trial counsel also stated: "It should be noted that one of the chief reasons for prior counsel to abandon the case, in seeking a Rule 41 dismissal, was due to the frustration over finding a witness willing to participate. This was certainly the sentiment left with [appellant]."
 {¶ 10} The trial court held a hearing on appellee's summary judgment motion on August 4, 2006, where the following took place. Appellee's counsel reminded the trial court that appellant's complaint was a refiled medical malpractice suit against appellee *Page 5 
and that appellant dismissed the previous complaint for failure to provide the identity of an expert and an expert report.
 {¶ 11} Appellant's trial counsel indicated at the hearing that he "made [appellant] aware of the ramifications for * * * not being able to have an expert witness[.]" (Tr. at 7-8.) Appellant's trial counsel also stated that he and appellant have "intensified our efforts over the past several months to find an expert witness," but that these efforts had proved unsuccessful. Nevertheless, appellant's trial counsel asked that he be allowed until August 31, 2006, to identify an expert witness and provide an expert witness report.
 {¶ 12} The trial court responded:
 * * * [Y]ou know the old saying, justice delayed is justice denied. And we're not doing justice here to the State, possibly even your client. I don't know for sure. Legislature felt it was appropriate, o[r] the Supreme Court, that this amount of time is what it should be for people to get their work done, and if not, they're — maybe it's time to look at the reasons why * * *.
(Tr. at 12.)
 {¶ 13} Next, the following exchange took place:
 THE COURT: * * * I might suggest here that if you requested the Court to dismiss this, the Court might be inclined to dismiss it without prejudice. At least that gets it off our docket, gets it done, and if you find somebody in the next year, I think that's — I'm not going to advise you on what the rule is, obviously, but if you find somebody in the next year, you might refile your case, because I don't think that would count against you. But you might want to look at that.
 MR. FINNERTY [appellant's counsel]: Your Honor, would it be possible for me to take that under advisement while I do some quick research? *Page 6 
 THE COURT: Yeah. I won't have a decision on this until probably the end of next week. I suppose in the meantime, you could file a motion to request the Court to dismiss it without prejudice and let it go at that.
 Ms. Khan, would you object to that?
 MS. KHAN [appellee's counsel]: No, Your Honor, we would not object.
 MS. KHAN: * * * I would also add that [appellant] has at no time requested an extension during the course of this case for * * * discovery or for an extension to get an expert. If this Court should decide to delay a decision for some period of time, giving him a period of time to decide to voluntarily dismiss, we wouldn't have an objection to that for that reason.
 THE COURT: * * * I can tell you my inclination is to dismiss it, based on [appellee's] motion * * *. And we may not * * *, I'm going to just delay any decision on this until the 1st of September. * * *
 * * *
 THE COURT: Knowing probably what the Court's going to do, if you find somebody in the meantime, then you can bring that person forth and maybe [appellee's counsel's] going to be willing to withdraw her motion or something at that point to let you proceed. I don't know.
 MS. KHAN: Just so I'm clear, Your Honor, you're going to delay until September 1st, and then if he — in the event that he does provide an expert, you would allow them to continue with that expert, although he's outside of the rule?
 THE COURT: That's not your request, is it?
 MS. KHAN: No.
 THE COURT: Okay. Well, I guess what I'm suggesting is at that point, the Court's probably going to — what it said originally. I'm suggesting to you that it would consider your requesting the Court to dismiss it without prejudice. *Page 7 
(Tr. at 13-16.)
 {¶ 14} On August 31, 2006, appellant's trial counsel submitted identifications and qualifications of two expert witnesses, Drs. David Mayer and Beatrice Engstrand. Both doctors opined that appellant "was misdiagnosed." Thereafter, appellee renewed its summary judgment motion or, alternatively, asked for a status conference. In making such motion, appellee asserted that appellant's expert witnesses' reports failed to identify who at The Ohio State University Medical Centers was allegedly negligent.
 {¶ 15} On October 2, 2006, the trial court issued a journal entry dismissing appellant's medical malpractice complaint, pursuant to Civ.R. 41(B)(1), concluding:
 * * * The court's November 14, 2005, entry setting trial states that "[appellant] shall furnish [appellee] with the names of expert witnesses and a copy of their reports on or before May 30, 2006." * * *
 L.C.C.R. 7(E) provides in relevant part:
 "Each trial attorney shall exchange with all other trial attorneys, in advance of the trial, written reports of medical and expert witnesses expected to testify. The parties shall submit expert reports in accordance with the schedule established by the court.
 "A party may not call an expert witness to testify unless a written report has been procured from said witness. * * * The report of an expert must reflect his opinions as to each issue on which the expert will testify. * * *"
 At the oral hearing, [appellant's trial] counsel stated that despite his diligent attempts he had been unable to find an expert witness to testify in this matter. The court notes that [appellant's] claims have previously been voluntarily dismissed pursuant to Civ.R. 41(A)(1)(a). Therefore, at the conclusion of the hearing, the court invited [appellant] to file a Civ.R. 41(A)(2) motion on or before September 1, 2006, so that she would have the opportunity to refile her case. *Page 8 
 On August 31, 2006, [appellant] filed a document that purports to "identify" expert witnesses but does not comply with L.C.C.R. 7(E). In light of [appellant's] belated attempts to comply with the court order and in fairness to [appellee], the court determines that this case is DISMISSED without prejudice pursuant to Civ.R. 41(B)(1). [Appellee's] motion for summary judgment is DENIED as moot. * * *
 {¶ 16} Appellant appeals, raising one assignment of error:
 THE TRIAL COURT ABUSED ITS DISCRETION BY DISMISSING APPELLANT'S COMPLAINT WHERE APPELLANT COMPLIED WITH THE COURT'S ORDER.
 {¶ 17} As an initial matter, appellant asks this court to conclude that the trial court's October 2, 2006 decision is not a final appealable order, and, in this regard, appellant asks us to allow her to refile her medical malpractice suit against appellee. However, we disagree with appellant's contentions.
 {¶ 18} R.C. 2505.02(B)(1) provides:
 An order is a final order that may be reviewed, affirmed, modified, or reversed, with or without retrial, when it is one of the following:
 (1) An order that affects a substantial right in an action that in effect determines the action and prevents a judgment[.]
Here, the trial court dismissed appellant's medical malpractice suit, pursuant to Civ.R. 41(B)(1), which provides for involuntary dismissals and states:
 (B) Involuntary dismissal: effect thereof
 (1) Failure to prosecute. Where the plaintiff fails to prosecute, or comply with these rules or any court order, the court upon motion of a defendant or on its own motion may, after notice to the plaintiff's counsel, dismiss an action or claim.
 {¶ 19} Pursuant to Civ.R. 41(B)(3), a dismissal under Civ.R. 41(B)(1) "operates as an adjudication upon the merits unless the court, in its order for dismissal, otherwise *Page 9 
specifies." Here, the trial court specified otherwise and dismissed appellant's medical malpractice suit without prejudice. Generally, a dismissal without prejudice constitutes "an adjudication otherwise than on the merits" with no res judicata bar to refiling the suit. (Emphasis omitted.) Thomas v. Freeman (1997), 79 Ohio St.3d 221, 225, fn. 2;Brubaker v. Ross, Franklin App. No. 01AP-1431, 2002-Ohio-4396, at ¶ 13. In addition, generally, a dismissal without prejudice is not a final appealable order, so long as a party may refile or amend a complaint. See Schmieg v. Ohio State Dept. of Human Serv. (Dec. 19, 2000), Franklin App. No. 00AP-561.
 {¶ 20} However, under certain circumstances, a party may be precluded from refiling a lawsuit even though the lawsuit had been previously dismissed without prejudice. See Brubaker at ¶ 15 (noting that a dismissal without prejudice does not guarantee that a lawsuit can be refiled). For example, the double dismissal rule enunciated in Civ.R. 41(A)(1)(b) states that "a notice of dismissal operates as an adjudication upon the merits of any claim that the plaintiff has once dismissed in any court." Thus, when applicable, the double dismissal rule triggers res judicata principles that preclude any further refiling of a lawsuit regardless of any language in the second dismissal indicating that such a dismissal is without prejudice. See Olynyk v.Scoles, 114 Ohio St.3d 56, 2007-Ohio-2878, at ¶ 10. The Civ.R. 41(A)(1) double dismissal rule applies only to voluntary dismissals under Civ.R. 41(A)(1)(a), however. Olynyk at ¶ 31; Dargart v. Ohio Dept. ofTransp., Wood App. No. WD-06-019, 2006-Ohio-6179, at ¶ 15. Here, the trial court's October 2, 2006 dismissal constituted an involuntary dismissal under Civ.R. 41(B)(1). Thus, the dismissal did not trigger the double dismissal rule and its res judicata effect on appellant's medical malpractice suit. Olynyk at ¶ 31; Dargart *Page 10 
at ¶ 15. In this regard, the double dismissal rule has no bearing on whether the trial court's October 2, 2006 dismissal is a final appealable order. See Schmieg.
 {¶ 21} We next note that even on a dismissal without prejudice, as here, a party must still refile the suit "within the applicable statute of limitations, or otherwise * * * in a manner permitted by the savings statute" described below. See Brubaker at ¶ 13, citing Mihalcin v.Hocking College (Mar. 20, 2000), Athens App. No. 99CA32. Thus, in determining whether the trial court's October 2, 2006 dismissal is a final appealable order under the dictates of Schmieg, we examine whether the statute of limitations or the savings statute precludes appellant from refiling her complaint.
 {¶ 22} Appellant concedes that the "statute of limitations for medical negligence actions set forth in R.C. 2305.113 suggests that by 2004 the statute of limitations had already run[.]" However, R.C. 2305.19(A), the savings statute, generally provides a party a limited period of time to refile a claim that had been dismissed otherwise than upon the merits, even though the claim would be time-barred under the statute of limitations. Charles v. Conrad, Franklin App. No. 05AP-410,2005-Ohio-6106, at ¶ 10. Specifically, the applicable version of R.C.2305.19(A), as effective from May 31, 2004, states:
 In any action that is commenced or attempted to be commenced, if in due time a judgment for the plaintiff is reversed or if the plaintiff fails otherwise than upon the merits, the plaintiff * * * may commence a new action within one year after the date of the reversal of the judgment or the plaintiff's failure otherwise than upon the merits or within the period of the original applicable statute of limitations, whichever occurs later. * * *
 {¶ 23} On June 26, 2004, appellant voluntarily dismissed without prejudice her previously filed medical malpractice suit and, as appellant recognizes, she utilized the *Page 11 
savings statute to refile her suit on June 27, 2005, after the statute of limitations had run. As analyzed below, appellant is unable to utilize the savings statute again to refile her medical malpractice claim.
 {¶ 24} "Where R.C. 2305.19 applies, the date for filing [a] new action relates back to the filing date for the preceding action for limitations purposes." Frysinger v. Leech (1987), 32 Ohio St.3d 38, 42. In this regard, the savings statute serves to revive an action commenced before the statute of limitations has expired. See Mihalcin; see, also,Worytko v. Feng (July 3, 1997), Cuyahoga App. No. 72049 (recognizing that "where an action has originally been timely commenced, R.C. 2305.19
provides an additional * * * time period within which to commence a new action after the date of reversal or failure otherwise than on the merits").
 {¶ 25} In Mihalcin, a plaintiff utilized the savings statute to revive an action that the Court of Claims had dismissed for lack of subject-matter jurisdiction. The plaintiff refiled the action after the statute of limitations had expired, but within the requisite time allotted by the savings statute. Ultimately, the plaintiff voluntarily dismissed the refiled action. Nonetheless, the plaintiff refiled the action a third time, again after the statute of limitations had expired. The defendant moved for summary judgment against the plaintiff, and the trial court granted the motion upon concluding that the savings statute was inapplicable to the plaintiff's third refiling and that, therefore, the statute of limitations barred the plaintiff's third refiling. The Fourth District Court of Appeals agreed, concluding that the "third complaint * * * fails to qualify for re-filing under R.C. 2305.19
because it constitutes an attempt to re-file an action that was not commenced before the expiration of the statute of limitations." (Emphasis omitted.) Mihalcin. *Page 12 
 {¶ 26} Here, on June 27, 2005, after the statute of limitations had expired, appellant utilized the savings statute to refile her medical malpractice suit. Pursuant to Frysinger, and like Mihalcin, any medical malpractice suit that appellant would refile would relate back to the preceding June 27, 2005 filing, which occurred after the statute of limitations expired. Thus, as explained in Mihalcin, appellant would be attempting to revive a lawsuit that was not commenced before the expiration of the statute of limitations and, as such, the savings statute would not apply.
 {¶ 27} We emphasize that our above savings statute analysis is "`not premised upon the nature of the dismissal'" that prompts the refiling.Estate of Carlson v. Tippett (1997), 122 Ohio App.3d 489, 492, citingSeawright v. Zabell (Apr. 27, 1989), Cuyahoga App. No. 55232. Thus, it is irrelevant to the savings statute analysis that the trial court dismissed the June 27, 2005 refiling as a Civ.R. 41(B) involuntary dismissal. See Brubaker at ¶ 15.
 {¶ 28} Accordingly, pursuant to Schmieg and based on the above, we conclude that, even though the trial court's October 2, 2006 dismissal was without prejudice, the dismissal constitutes a final appealable order because appellant cannot refile her medical malpractice suit. Having concluded that the trial court's October 2, 2006 dismissal entry is a final appealable order, we next address the merits of appellant's single assignment of error, in which appellant contends that the trial court abused its discretion by dismissing her medical malpractice suit pursuant to Civ.R. 41(B)(1). We disagree.
 {¶ 29} The power to dismiss under Civ.R. 41(B)(1) is within the sound discretion of the trial court, and we limit our review to determining whether the trial court abused *Page 13 
that discretion. Pembaur v. Leis (1982), 1 Ohio St.3d 89, 91;Quonset Hut, Inc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46, 47. An abuse of discretion connotes more than a mere error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Ultimately, however, judicial discretion must be carefully and cautiously exercised before a reviewing court will uphold an outright dismissal of a case on purely procedural grounds. DeHart v. Aetna LifeIns. Co. (1982), 69 Ohio St.2d 189, 192; see, also, Quonset Hut,Inc. at 48 (noting that "`disposition of cases on their merits is favored in the law'"), quoting Jones v. Hartranft (1997),78 Ohio St.3d 368, 371.
 {¶ 30} The trial court utilized Civ.R. 41(B)(1) to dismiss appellant's medical malpractice suit for appellant's trial counsel's failure to comply with L.C.C.R. 7(E), which, as noted above, requires attorneys to provide each other expert witness reports "in accordance with the schedule established by the court" and also states that the reports "must reflect [the expert witnesses'] opinions as to each issue on which the expert will testify." The trial court had required appellant's trial counsel to provide appellee, by May 30, 2006, the identity of appellant's expert witnesses and reports from her expert witnesses. Appellant's trial counsel did not produce information on her expert witnesses until August 31, 2006.
 {¶ 31} In providing such information, as noted above, appellant's trial counsel disclosed names of appellant's expert witnesses and reports from the witnesses opining that appellant "was misdiagnosed." However, the reports did not disclose opinions on which, if any, of appellee's agents misdiagnosed appellant. We may properly infer that appellant would have utilized the expert witnesses for such an issue, if possible, given *Page 14 
that appellant's trial counsel acknowledged to the court the crucial role of expert witnesses in appellant's case, and given that, in a medical malpractice claim, a plaintiff must show, in pertinent part, that "`the physician in question negligently departed from'" the requisite standard of care "`in his treatment of [the] plaintiff.'"Bruni v. Tatsumi (1976), 46 Ohio St.2d 127, 131, quoting Davis v.Virginian Ry. Co. (1960), 361 U.S. 354, 357. Thus, we conclude that appellant's trial counsel did not comply with L.C.C.R. 7(E) because he submitted expert witnesses' reports that failed to disclose "opinions as to each issue on which the expert will testify[,]" i.e., an opinion on the crucial issue of who misdiagnosed appellant.
 {¶ 32} Appellant failed to comply with L.C.C.R. 7(E) despite being put on notice that: (1) appellee had sought summary judgment due to appellant's trial counsel's failure to produce the identities of appellant's expert witnesses and the expert witnesses' reports; and (2) the trial court stated at the August 4, 2006 hearing its inclinations to dismiss appellant's medical malpractice suit due to such failures. See, e.g., Asres v. Dalton, Franklin App. No. 05AP-632, 2006-Ohio-507, at ¶ 12-18 (discussing notice requirements on Civ.R. 41[B] dismissals);Carmel Financial Corp. v. Leal, Lucas App. No. L-06-1049,2006-Ohio-5618, at ¶ 34-38 (same); Schneider v. Academy of CourtReporting (Mar. 31, 1994), Franklin App. No. 93APE07-989 (same). Yet, appellant nevertheless argues on appeal that the trial court need not have dismissed appellant's medical malpractice suit, but could have merely disallowed testimony from the expert witnesses.
 {¶ 33} L.C.C.R. 7(F) states that "[t]he sanctions stated in Civil Rule 37(B)(2) may be assessed for failure to timely comply with" L.C.C.R. 7. "Civ.R. 37(B)(2) provides *Page 15 
various sanctions for a failure to comply with discovery. The range includes the imposition of expenses for costs incurred in obtaining the required discovery to that of dismissal of the action[.]" Russo v.Goodyear Tire Rubber Co. (1987), 36 Ohio App.3d 175, 178, citing Civ.R. 37(B)(2)(c). It is of no consequence that the trial court utilized Civ.R. 41 (B)(1) with no mention of Civ.R. 37(B)(2) to dismiss appellant's lawsuit, given that the dismissal provisions of Civ.R. 37(B) and 41(B)(1) are applied in pari materia. See Austin v. Miami ValleyHosp. (1984), 19 Ohio App.3d 231, 232; Schneider.
 {¶ 34} To support her argument that a dismissal of her malpractice suit was not warranted, appellant relies on United Holy Church ofAmerica, Inc. v. Kingdom Life Ministries, 165 Ohio App.3d 782,2006-Ohio-708. In United Holy Church, the plaintiff filed an action against the defendant on March 8, 2004. Id. at ¶ 2. On October 29, 2004, the defendant filed a motion to compel the plaintiff to provide discovery "propounded upon [the plaintiff] on June 9, 2004." Id. at ¶ 2. On December 1, 2004, the trial court ordered the plaintiff to provide outstanding discovery by December 15, 2004, "`or sanctions including the possibility of dismissal may be imposed.'" Id. On December 14, 2004, the plaintiff "generally answered the discovery * * * but reserved the right to produce supplemental information as it became available." Id. at ¶ 3. On March 11, 2005, the defendant filed a motion to dismiss the plaintiff's lawsuit, and the trial court dismissed the lawsuit with prejudice. Id.
 {¶ 35} The Eighth District Court of Appeals reversed, concluding:
 [The plaintiff] attempted to comply with the trial court's order by responding to discovery by December 15. Although not complete, [the plaintiff's] discovery responses do not establish a willfulness or bad faith under the circumstances *Page 16 
before us. [The plaintiff] * * * represented that it would provide supplemental responses. Although [the defendant] may have disagreed, [the plaintiff] believed that it had complied with the trial court's order. "[O]nce plaintiff's counsel has responded to the notice given pursuant to Civ.R. 41(B)(1) by complying with the trial court's outstanding order, the trial court may not thereafter dismiss the action or claim on the basis of noncompliance with that order." Sazima v. Chalko (1999), 86 Ohio St.3d 151, 157 * * *.
 [The defendant] did not file any subsequent motions to compel or otherwise contact or advise opposing counsel of any discovery dispute. There is no further order notifying [the plaintiff] that the trial court would consider dismissal if it did not provide supplemental responses. Nonetheless, the trial court dismissed the action with prejudice and there is no indication that the trial court considered any alternative sanctions.
United Holy Church at ¶ 8-9. Lastly, the appellate court stated: "While we do not countenance dilatory or evasive discovery responses, the sanction of dismissal with prejudice in this case was too harsh." Id. at ¶ 11.
 {¶ 36} Here, relying on United Holy Church, appellant argues that the trial court abused its discretion when it dismissed her lawsuit, even though appellant's trial counsel eventually provided the above-noted information about appellant's expert witnesses pursuant to the trial court's order under L.C.C.R. 7(E). However, despite appellant's contentions, the record evinces the kind of dilatory conduct thatUnited Holy Church ultimately denounced. See United Holy Church
at ¶ 11.
 {¶ 37} Dilatory conduct is that which "[t]end[s] to cause delay[.]" Black's Law Dictionary (7th Ed.1999), 468. Here, the record discloses repeated delays by appellant's trial counsel and repeated attempts by appellee and the trial court to address and remedy those delays. Appellant's counsel failed to comply timely with discovery *Page 17 
requests. Counsel failed to attend multiple status conferences and a mediation. Counsel missed the deadline for identifying expert witnesses and then failed to provide substantive reports from those expert witnesses. Given this procedural history, we cannot conclude that the court should have given counsel yet another extension to comply with the disclosure requirements of L.C.C.R. 7(E). See Siggers v. Strother, Franklin App. No. 06AP-559, 2006-Ohio-6372, at ¶ 35 (reviewing under Civ.R. 41[B][1] a trial court's dismissal of a plaintiff's complaint and, in doing so, "considering] [the plaintiff's] entire course of conduct before the trial court").
 {¶ 38} While appellant's trial counsel may not have been acting in bad faith, we note that appellant's trial counsel's actions nonetheless were dilatory and, as United Holy Church recognizes, a trial court need not countenance dilatory conduct. Id. at ¶ 11. Indeed, a dismissal under Civ.R. 41(B)(1) "appears intended to vindicate the authority of the court" against a "dilatory party." Gruenspan Co., LPA v. Thompson, Cuyahoga App. No. 80748, 2003-Ohio-3641, at ¶ 7. Accordingly, here, based on the circumstances surrounding appellant's trial counsel's deficient compliance with L.C.C.R. 7(E) and, considering counsel's entire course of conduct before the trial court, we conclude that the trial court did not abuse its discretion when it dismissed, pursuant to Civ.R. 41(B)(1), appellant's June 27, 2005 medical malpractice lawsuit.
 {¶ 39} Lastly, we reiterate that, while the trial court dismissed appellant's medical malpractice lawsuit without prejudice, statute of limitations and savings statute considerations preclude appellant from again refiling her medical malpractice lawsuit. Although the trial court may not have intended such a result, "the trial court was without authority to enlarge the savings statute[.]" See Duncan v.Stephens, Cuyahoga App. *Page 18 
No. 83238, 2004-Ohio-2402, at ¶ 24. Thus, although appellant and the trial court "`may have understood the dismissal to be "without prejudice," this understanding does not constitute an authorization for * * * appellant to proceed in derogation of the statute of limitations'" or the savings statute. See Duncan at ¶ 25, quoting Mihalcin. Thus, in the final analysis, because the trial court did not abuse its discretion in dismissing, pursuant to Civ.R. 41(B)(1), appellant's medical malpractice lawsuit, the dismissal is not subject to reversal and the consequences of the dismissal remain, intended or unintended.
 {¶ 40} As such, based on the above, we overrule appellant's single assignment of error, and we affirm the judgment of the Ohio Court of Claims.
Judgment affirmed.
DESHLER, J., concurs. TYACK, J., dissents.
DESHLER, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.