[Cite as *Huntington Natl. Bank v. Jasar Recycling, Inc.*, 2013-Ohio-426.]
STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| HUNTINGTON NATIONAL BANK, | ) | |
|---|---|---|
| PLAINTIFF-APPELLEE, | ) | |
| V. | ) | CASE NO. 11-CO-24 |
| JASAR RECYCLING, INC., | ) | OPINION |
| DEFENDANT-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from Court of Common Pleas of Columbiana County, Ohio Case No. 08CV705

JUDGMENT:    Reversed and Remanded

APPEARANCES:
For Plaintiff-Appellee    Atty. Jerry M. Bryan
Atty. Jerry R. Krzys
6 Federal Plaza Central
Suite 1300
Youngstown, Ohio 44503

For Defendant-Appellant    Atty. Christopher A. Maruca
Atty. Daniel P. Osman
6630 Seville Drive
201 East Commerce Street
Suite 316
Youngstown, Ohio 44503

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: February 8, 2013

[Cite as *Huntington Natl. Bank v. Jasar Recycling, Inc.*, 2013-Ohio-426.]
DONOFRIO, J.

{¶1} Defendant-appellant, Jasar Recycling, Inc., appeals from Columbiana County Common Pleas Court judgments granting summary judgment in favor of plaintiff-appellee, The Huntington National Bank, and granting Huntington attorney's fees.

{¶2} Jasar is engaged in the plastics recycling business. Capco Polymer Industries, Inc. was likewise engaged in the plastics recycling business. Capco operated its recycling business at 44054 Heck Road in Columbiana (the building). When Capco's business began to fail, it started winding down its operations in August 2007.

{¶3} In October 2007, after Capco shut down its business operations, the owner of the Heck Road building leased the building to Elite Polymer, another plastics recycling company. Capco's remaining inventory stayed at the building.

{¶4} In the course of Capco's business, it obtained financing from Huntington. To secure the financing, Capco granted a security interest in its inventory to Huntington.

{¶5} In December 2007, Capco offered to sell its remaining inventory to Jasar. On December 6, 2007, Jasar's owner, Edward McNee, signed an Agreement (the Agreement) to purchase Capco's remaining inventory. According to the Agreement, Jasar was to pay Huntington for the inventory. Also, Jasar was to remove the entire inventory by December 31, 2007, and to make payment directly to Huntington within ten business days from the date the inventory was removed. Jasar did not remove any inventory from the building before December 31, 2007.

{¶6} According to McNee, Capco decided to sell the inventory to other buyers and informed him that the Agreement had expired. Also according to McNee, Capco contacted him in January 2008, and made a new offer to sell its remaining inventory to Jasar. Jasar agreed to purchase the inventory and move it from the building. McNee stated that Huntington was not a party to this agreement nor was it a third-party beneficiary because Jasar did not agree to pay Huntington this time but instead agreed to pay Capco.

**{¶7}** On January 18, 19, and 20, 2008, Jasar removed all inventory from inside of the building but did not remove any inventory from outside of the building. Jasar removed four truckloads of inventory from outside of the building sometime between January 2008 and March 2008. It left some inventory outside of the building.

**{¶8}** According to McNee, after removing some of the inventory, Jasar realized that the inventory was "contaminated" and was not the same quality or quantity that Capco had represented. Jasar wanted to return the inventory but Capco refused.

**{¶9}** Jasar did not pay Capco for the inventory. Likewise, it did not pay Huntington.

**{¶10}** On July 11, 2008, Huntington filed a complaint as a third-party beneficiary to the Agreement against Jasar alleging breach of contract and unjust enrichment and seeking damages.

**{¶11}** On March 6, 2009, Huntington served discovery requests on Jasar.

**{¶12}** Over a year later, on May 12, 2010, Huntington filed a motion to compel, requesting the trial court to order Jasar to respond to the discovery requests. The trial court granted Huntington's motion and ordered Jasar to respond to the discovery requests.

**{¶13}** On June 1, 2010, Jasar provided discovery responses to Huntington. However, Huntington was not satisfied with the responses. Therefore, it filed a contempt motion claiming that Jasar only responded to 6 of 21 interrogatories.

**{¶14}** A magistrate granted Huntington's motion and ordered Jasar to provide full responses to the remaining interrogatories and requests for production. Jasar did not file objections to the magistrate's decision.

**{¶15}** On July 26, 2010, Jasar provided Huntington with supplemental responses to the discovery requests.

**{¶16}** On July 29, 2010, Huntington deposed McNee. At the deposition, Jasar produced 13 pages of documents that it had inadvertently withheld from Huntington.

Additionally, it came to light that Jasar had not examined potentially relevant emails or "pick-up slips." Consequently, Jasar's counsel agreed to provide additional discovery information to Huntington.

**{¶17}** On September 1, 2010, Huntington filed its second contempt motion, asserting that Jasar had failed to provide the additional agreed upon discovery. After a hearing on the matter, the magistrate issued a decision finding Jasar to be in contempt once again. The magistrate found that Jasar had willfully failed to provide certain requested documents and information to Huntington. The magistrate then awarded sanctions that included: (1) a finding that a contract existed between Capco and Jasar; (2) a finding that Huntington is a third-party beneficiary of the contract; (3) an order barring Jasar from presenting evidence supporting affirmative defenses; and (4) an award of attorney fees and costs for failure to comply with discovery. The trial court adopted the magistrate's decision over Jasar's objections.

**{¶18}** Next, Huntington filed a motion for summary judgment. It relied in part on the magistrate's discovery sanctions but also argued that summary judgment was appropriate even if the discovery sanctions were disregarded.

**{¶19}** The trial court granted summary judgment in Huntington's favor. The court cited the magistrate's decision regarding discovery sanctions wherein the magistrate determined that the Agreement was a valid contract to which Huntington was a third-party beneficiary. The court also went on to independently find that there were no genuine issues of material fact and that Huntington was entitled to judgment as a matter of law. The court found that the Agreement was a clear, unambiguous contract and that Huntington was a third-party beneficiary of the contract. It went on to find that under the terms of the Agreement, Jasar was obligated to purchase and remove all of Capco's inventory from inside and outside the building and to pay Huntington for the inventory, which it failed to do. The court further found that Huntington produced credible evidence that it was damaged in the amount of $99,335.16 and that Jasar produced no credible evidence to create a material issue of fact with regard to damages. Thus, the court awarded Huntington $99,335.16, plus

interest.

**{¶20}** The trial court then conducted a hearing on the amount of attorney fees and costs awardable as sanctions. The court awarded Huntington $7,767.50, plus interest, for reasonable attorney fees.

**{¶21}** Jasar filed a timely notice of appeal on July 28, 2011.

**{¶22}** Initially, it should be noted Huntington argues in its brief that we must dismiss this appeal as moot because the judgment has already been satisfied through garnishments. But Huntington raised the identical issue with this court in its September 2, 2011 motion to dismiss. In a September 23, 2011 judgment entry, we overruled Huntington's motion to dismiss and stated that the appeal was to continue. Thus, we need not further address Huntington's argument that this appeal is moot.

**{¶23}** Jasar raises two assignments of error, the first of which states:

THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING A DISCOVERY SANCTION PROHIBITING JASAR FROM ASSERTING AFFIRMATIVE DEFENSES, FINDING THAT A CONTRACT EXISTED BETWEEN JASAR AND CAPCO IN WHICH HUNTINGTON WAS A THIRD PARTY BENEFICIARY, AND HAVING JASAR PAY HUNTINGTON'S ATTORNEY'S FEES.

**{¶24}** Jasar argues that the sanctions imposed for the discovery violation were too severe. It asserts that the magistrate who imposed the sanctions had no experience prior to this case in dealing with civil cases. Instead, Jasar asserts that the magistrate's experience was limited solely to domestic relations cases. It contends that the magistrate's sanctions were unreasonable and arbitrary in light of the fact that the magistrate was to impose the least severe sanction.

**{¶25}** Jasar contends that by imposing as a sanction a finding that a contract existed between Jasar and Capco of which Huntington is a third-party beneficiary and by prohibiting Jasar from asserting any affirmative defenses, the trial court essentially granted Huntington a default judgment.

**{¶26}** Jasar goes on to assert that the record does not establish a willful disregard of the discovery rules or bad faith. It claims that it fully complied with Huntington's discovery requests before the magistrate held the September 22, 2010 hearing on the second contempt motion. Thus, Jasar argues the magistrate should have imposed the least severe sanction.

**{¶27}** Among the discovery documents provided to Huntington, Jasar states, was a copy of an email revoking the Agreement. Jasar states that it provided this email to Huntington before July 29, 2010. By imposing the severe sanctions that it did, Jasar argues that the trial court excluded this probative evidence.

**{¶28}** A trial court has broad discretion to impose sanctions against a party who violates the discovery rules, and this court will not reverse the trial court's determination on this issue absent an abuse of discretion. *Nakoff v. Fairview Gen. Hosp.*, 75 Ohio St.3d 254, 256, 662 N.E.2d 1 (1996). Abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). When ruling on discovery violations and sanctions, the trial court should examine,

> the history of the case; all the facts and circumstances surrounding the noncompliance, including the number of opportunities and the length of time within which the faulting party had to comply with the discovery or the order to comply; what efforts, if any, were made to comply; the ability or inability of the faulting party to comply; and such other factors as may be appropriate.

*Russo v. Goodyear Tire & Rubber Co.*, 36 Ohio App.3d 175, 178, 521 N.E.2d 1116 (1987). Upon review and examining those factors the trial court should consider, if the appellate court finds that the degree of the sanction is disproportionate to the seriousness of the discovery violation, then it may find that the trial court abused its discretion. *Id.* at 179.

**{¶29}** Civ.R. 37(B)(2) provides:

(2) If any party or an officer, director, or managing agent of a party or a person designated under Rule 30(B)(5) or Rule 31(A) to testify on behalf of a party fails to obey an order to provide or permit discovery, * * * the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

(a) An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

(b) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence;

* * *

In lieu of any of the foregoing orders or in addition thereto, the court shall require the party failing to obey the order or the attorney advising him or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court expressly finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

**{¶30}** Pursuant to Ohio public policy, the trial court, when possible, should impose the least severe sanction that effectively removes the prejudice caused by the sanctioned party's wrongdoing. *Loukinas v. Roto-Rooter Servs. Co.*, 167 Ohio App.3d 559, 855 N.E.2d 1272, 2006-Ohio-3172, ¶16 (1st Dist.), quoting *Transamerica Ins. Group v. Maytag*, 99 Ohio App.3d 203, 207, 650 N.E.2d 169 (1994).

**{¶31}** At his July 29, 2010 deposition, McNee stated that in response to

Huntington's first set of interrogatories and request for documents, he printed a list from an email. (McNee dep. 81-82). He stated that he also provided his attorney with numerous documents including relevant emails and bills of lading. (McNee dep. 83, ex. 5). Huntington's counsel put on the record that he just received these documents that day because Jasar's counsel had them in a file he did not realize that he had. (McNee dep. 83-84). Huntington's counsel noted that Jasar's counsel did not intentionally withhold the documents. (McNee dep. 83-84).

{¶32} Huntington's counsel also asked McNee to provide copies of other emails, some addresses, and pickup slips without having to make a formal discovery request and McNee agreed. (McNee dep. 100-101, 103, 109). McNee admitted that in response to the discovery requests, he did not examine the pickup slips for the loads Jasar picked up from Capco. (McNee dep. 125-126). He also admitted that he did not search his emails for exchanges between Jasar and Capco or Jasar and Huntington. (McNee dep. 139).

{¶33} At the conclusion of the deposition, counsel for both parties put an agreement on the record that Jasar would provide additional information to Huntington without the need for another discovery request. (McNee dep. 152). This information included emails between Jasar and Capco, contact information for any employees that were involved in the transportation of inventory from Capco to Jasar, contact information for Brenda Hoschar, pickup slips for January 18, 19, and 20, and an address for D&G's warehouse in Sebring. (McNee dep. 152-153).

{¶34} At the September 22, 2010 hearing on the motion to compel, it came to light that since Huntington had filed the second motion for sanctions, Jasar had provided Huntington with most, if not all, of the requested discovery information. (Sept. 22, 2010, Tr. 4-5). Huntington's counsel could not point to anything specific that was missing from discovery except that there were possibly some emails that McNee could not locate. (Sept. 22, 2010, Tr. 5-6). Thus, while Jasar may not have immediately provided all information to Huntington, as of the September 22, 2010 hearing, Jasar had complied with the discovery requests.

**{¶35}** Additionally, at the hearing, the magistrate noted that in his usual handling of discovery sanctions, when parties did not comply, he normally prohibited them from using the evidence and prohibited them from using any documents that were requested in their defense. (Sept. 22, 2010, Tr. 8).

**{¶36}** Because the exclusion of reliable and probative evidence is a severe sanction the trial court should only invoke it when it is clearly necessary to enforce willful noncompliance or to prevent unfair surprise. *Nickey v. Brown*, 7 Ohio App.3d 32, 34, 454 N.E.2d 177 (1992).

**{¶37}** In this case, the magistrate and the trial court unnecessarily imposed the most severe sanctions on Jasar. While Jasar clearly did not comply with the discovery requests in a timely manner and caused Huntington to file two motions to comply, Jasar eventually did comply. By the time of the hearing on the second motion to compel, Huntington could not point to anything that Jasar had not yet provided except that there was a possibility that there could be more emails between McNee and Capco. Furthermore, the magistrate stated at the hearing that normally in this type of situation, he would disallow evidence that was not disclosed. Instead, in this case, he imposed much more severe penalties by entering findings that a contract existed between Capco and Jasar and that Huntington was a third-party beneficiary of the contract in addition to putting on an order barring Jasar from presenting evidence supporting any affirmative defenses.

**{¶38}** Under these circumstances, the discovery sanctions constituted an abuse of discretion. The court needlessly imposed the most severe sanctions possible. The court entered findings that a contract existed between Jasar and Capco and that Huntington was a third-party beneficiary to that contract. And the court prohibited Jasar from presenting any affirmative defenses. In imposing these sanctions, the court essentially entered judgment for Huntington. Accordingly, Jasar's first assignment of error has merit.

**{¶39}** Jasar's second assignment of error states:

THE TRIAL COURT ERRED IN GRANTING HUNTINGTON'S

MOTION FOR SUMMARY JUDGMENT.

{¶40} Here, Jasar contends summary judgment was not appropriate. It asserts the trial court ignored portions of McNee's deposition that created a genuine issue of material fact. Jasar points to testimony by McNee that Capco cancelled the Agreement because it wanted to sell its inventory to other customers and later entered into a new agreement with Jasar to sell its remaining inventory. Under the alleged new agreement, Jasar was to pay Capco directly and Huntington was not a third-party beneficiary. Jasar argues that construing these facts in its favor creates a genuine issue of material fact to preclude summary judgment.

{¶41} Alternatively, Jasar argues that if this court determines that the Agreement was in force and legally binding, summary judgment was still not proper because there exists a factual dispute regarding Capco's performance under the Agreement and whether Jasar accepted the inventory. It contends the inventory it eventually removed from the building was not the same quality or quantity as Capco had represented. Jasar states it tried to return the inventory, but Capco refused.

{¶42} In reviewing a trial court's decision on a summary judgment motion, appellate courts apply a de novo standard of review. *Cole v. Am. Industries & Resources Corp.*, 128 Ohio App.3d 546, 552, 715 N.E.2d 1179 (1998). Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *State ex rel. Parsons v. Flemming*, 68 Ohio St.3d 509, 511, 628 N.E.2d 1377 (1994). A "material fact" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (1995), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S.Ct. 2505 (1986).

{¶43} To prevail in a breach of contract case, the plaintiff must prove the existence of a contract, the plaintiff's performance under the contract, the defendant's

breach, and damages. *Doner v. Snapp*, 98 Ohio App.3d 597, 600, 649 N.E.2d 42 (1994).

**{¶44}** A third-party beneficiary may recover damages from a breach of contract if that third party was intended to be a beneficiary of the contract. *G.R.P.L. Ents., Inc. v. Sethi*, 7th Dist. No. 09-MA-205, 2010-Ohio-6513, ¶11. To be an intended third-party beneficiary, the parties must have entered into the contract directly or primarily for the benefit of the third party. *Id.* at ¶12.

**{¶45}** The Agreement provided:

> Jasar Recycling, Inc. agrees to purchase the complete inventory of CAPCO Polymer Industries, Inc.
>
> The materials are to be sold "as is" with no warranty. * * * The inventory is thought to be 1,200,000 pounds, this is a close approximation. Jasar agrees to purchase the entire inventory without exception. The agreed price is $0.04 per pound for all the materials outside the building, and all the materials inside the building are at $0.10 per pound.
>
> The monies due will be paid to Huntington Bank c/o Ms. Jodi Pagnanelli. The weight will be determined by getting certified light and heavy scale weights for every load * * *. The monies will be paid to Huntington Bank within 10 business days from the date they are picked up at the Heck Rd. location. The entire inventory must be moved out of this location by 12-31-07. * * * Jasar agrees to pay, as stated above, for CAPCO's entire inventory, without exception, these monies are to be paid in full to Huntington Bank without deduction or credit taken.

(McNee dep., Ex. 2). The Agreement was signed by McNee on December 6, 2007. The Agreement was not singed by representatives of Capco or of Huntington.

**{¶46}** The Agreement sets forth clear terms and also clearly identifies Huntington as an intended third-party beneficiary. However, at his deposition McNee

stated that Capco terminated the Agreement. (McNee dep. 55-56, 62-63, 101). Jasar provided Huntington with a copy of an email from Capco's owner Doug Green to McNee dated January 16, 2008. (McNee dep. 83-84. Ex. 5). In his email, Green wrote:

> Our Agreement ended on 12-31-07. You did not take 1 load in the time allotted by the bank to move the entire inventory. Because of this, CAPCO's old inventory will be re-bid *per Jodi at the bank.*

(Emphasis added; McNee dep. Ex. 6). McNee testified that Capco then offered its inventory to other buyers and sold some of its inventory. (McNee dep. 53). McNee then stated that he entered into a new agreement with Capco. (McNee dep. 55-56, 58, 85).

{¶47} McNee's statements and Green's email create a genuine issue of material fact as to whether the Agreement was actually in place, whether Capco may have breached the Agreement by selling inventory to other buyers, and whether Capco and Jasar entered into a new agreement. The Agreement stated that Jasar was to pay the money to Huntington "c/o Jodi Pagnanelli." In Green's email, he stated that "per Jodi at the bank" Capco was going to rebid its inventory. This gives rise to the inference that Huntington, through its representative, assented to terminating the Agreement and even that it may have been Huntington's decision to rescind the Agreement. Hence, McNee's statements along with the email from Green to McNee are sufficient to create a genuine issue of material fact.

{¶48} We should mention that Capco argues that Jasar waived the affirmative defense that the Agreement was rescinded because Jasar failed to raise it in its answer. But Jasar did raise as affirmative defenses that (1) Huntington, through the conduct of its agents and employees, waived any rights it may have regarding Jasar's acts or omissions and that (2) Huntington voluntarily exposed itself to the matters involved in the complaint. These defenses would include rescission.

{¶49} Based on the preceding discussion, summary judgment was improper.

**{¶50}** Accordingly, Jasar's second assignment of error has merit.

**{¶51}** For the reasons stated above, the trial court's judgments imposing discovery sanctions and awarding summary judgment in Huntington's favor are reversed and the matter is remanded for further proceedings. Upon remand, the trial court may impose less severe discovery sanctions if it finds that such sanctions were warranted.

Waite, .J., concurs.

DeGenaro, P.J., concurs.